204 N.J. Super. 639 (1985)
499 A.2d 1041
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ABDULLAH CHILDS A/K/A FREDERICK IVAN CHILDS, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROSE MARIE KETCHUM, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued and Submitted September 30, 1985.
Decided October 31, 1985.
*641 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and LONG.
Alan Dexter Bowman argued the cause for appellant Abdullah Childs. (A-4004-83T4).
Thomas S. Smith, Acting Public Defender, attorney for appellant Rose Ketchum (William Welaj, Designated Counsel, of counsel and on the brief). (A-5143-83T4).
Gilbert G. Miller, Deputy Attorney General, argued the cause for respondent in A-4004-83T4 (Irwin I. Kimmelman, Attorney General, attorney; Patricia E. Stern, Deputy Attorney General, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General, attorney for respondent in A-5143-84T4 (Gilbert G. Miller, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on defendants' appeals from judgments of conviction in a criminal case arising from an armed robbery by defendant Frederick Childs of a Kaufman Carpet store in Greenbrook, New Jersey. Defendant Rose Marie Ketchum was the operator of the vehicle in which Childs fled from the scene. Defendants jointly appealed but after a substitution of attorney was filed for Ketchum we severed the appeals. We now consolidate the appeals for purposes of decision.
The indictment returned in Somerset County charged both defendants in the first count with first degree armed robbery, N.J.S.A. 2C:15-1. Childs was separately indicted for second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count two); third-degree aggravated assault with a deadly weapon, N.J.S.A. 2C:12-1(b)(2) (count three); fourth-degree possession of a handgun by a convicted felon, N.J.S.A. 2C:39-7 (count four); fourth-degree unlicensed acquisition of a *642 handgun, N.J.S.A. 2C:39-10 (count five); third-degree aggravated assault of two uniformed police officers while they were acting in the performance of their duties, N.J.S.A. 2C:12-1(b)(5) (counts six and seven); and fourth-degree unlawful possession of hollow-nosed bullets, N.J.S.A. 2C:39-3(f) (count eight). Defendants pleaded not guilty.
At a pretrial hearing the court, though precluding the use of one conviction, ruled that four other prior convictions of Childs could be used against him for impeachment purposes under State v. Sands, 76 N.J. 127 (1978). At the ensuing jury trial Childs was found guilty of armed robbery, unlawful possession of a handgun with an unlawful purpose, simple assault as a lesser included offense under the third count and unlawful possession of snub-nosed bullets. He was found not guilty of the unlicensed acquisition of a handgun and the two charges of aggravated assault on the police officers. Count four was severed and thus was not submitted to the jury. Ketchum was found not guilty of armed robbery but guilty of the lesser included offense of hindering the apprehension of an individual, N.J.S.A. 2C:29-3.
As a result of the acquittals and mergers Childs was sentenced only on the first and eighth counts. On the first count he was sentenced to an extended term of 50 years with a 25 year period of parole ineligibility. On the eighth count he was sentenced to a concurrent term of 18 months. Ketchum was sentenced to an indeterminate term not to exceed five years. Both defendants were assessed appropriate penalties for the use of the Violent Crimes Compensation Board.
The following evidence was developed at the trial. On September 5, 1983 four employees were present at the Kaufman Carpet store in Greenbrook when a man, later identified by two of them as Childs, entered the store at about 7:15 p.m. The store was well lit at that time. Childs told one of the employees, John Goleskie, who was on the telephone to put it down. Childs then pulled the telephone from Goleskie's hands after *643 which he produced a gun, cocked it and struck vice president Pat LePre in the ribs. Childs then demanded money. John Mayers, another employee, kept all cash receipts in his pocket as the store had no cash register. Mayers produced $1,240 in $100, $50 and smaller bills. Childs took this money and demanded more. The employees offered money from their wallets which Childs declined. He then left the store warning the employees he would shoot if they followed him.
After Childs left the store Mayers went to the front door and was able to see a white El Dorado with out-of-state license plates on the shoulder of Route 22 pulling into traffic. He saw no other vehicle pulling out. Mayers yelled this description of the car to LePre who was already on the telephone with Greenbrook police and LePre passed the description onto the police. At that time Patrolman Schultz of the North Plainfield police, while on routine patrol, heard the radio description of the white El Dorado. He saw a car drive by him matching that description driven by a female with a man crouched down in the passenger seat. Shultz pulled the car over. Other police arrived and Ketchum, the driver, and Childs, the passenger, were detained. Kaufman employees Goleskie and Mayers were brought to the scene and within 10 or 15 minutes after the robbery identified Childs as the man who had robbed them, an identification they repeated at the trial. When Childs was stopped, he was wearing the same clothes he had been wearing during the robbery. Defendants were arrested but a search of the immediate vicinity and a pat down of Childs produced no weapons.
Defendants were taken to the police station. In a strip search the police recovered four $50 bills from Ketchum's bra and $122 from her purse. The police had difficulty in searching Childs. Obviously they were concerned about the weapon so when none was found a body cavity search was ordered, a procedure to which Childs vehemently objected. There was a brawl after the police attempted to disrobe Childs and it took six or seven police officers, one using a blackjack, to subdue *644 and handcuff him. There were injuries in the fighting and Childs became unconscious. $200 was found in Childs' wallet. The police called the rescue squad to transport Childs to the hospital and while he was unconscious in the rear of the squad vehicle, a police officer, Carl Gaebel, unzipped Childs' pants and recovered a small handgun from his underwear. Gaebel testified that although there was an attendant present when the weapon was recovered, he did not know his name, nor did he indicate in his police report that the attendant had been present at that time. Neither side called this attendant as a witness.
Childs and Ketchum testified in their own defense. Childs said he and Ketchum were driving from Phillipsburg to East Orange, returning to a party. At the time they were stopped he had been drinking and was dozing, slumped in the front passenger seat. He denied being the robber and said he never had a weapon. Ketchum corroborated Childs' testimony.
On this appeal Childs contends:
POINT I  APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO EFFECT PARTICULAR INVESTIGATORY MEASURES WHICH WOULD HAVE UNCOVERED CONCLUSIVE EXCULPATORY EVIDENCE. (Not raised below).
i. Applicable Law.
a. The Roots Of The Right To Effective Counsel.
b. United States v. Cronic and Strickland v. Washington.[1]
ii. Appellant Was Clearly Denied Effective Assistance of Counsel Within The Guidelines Set Forth In Strickland and Cronic.

POINT II  EXCLUSION OF APPELLANT FROM CRITICAL STAGES OF THE TRIAL IMPAIRED HIS ABILITY TO EFFECTIVELY PARTICIPATE IN HIS DEFENSE AND REQUIRES THE GRANT OF A NEW TRIAL. (Not raised below).
i. Factual Background.
ii. R. 3:16 And The Law As To Presence At Trial.
iii. Exclusion of Appellant From The Courtroom During Jury Communications Resulted In Clear Prejudice.

*645 POINT III  THE TRIAL COURT ERRED IN INSTRUCTING THE HUNG JURY MERELY TO CONTINUE ITS DELIBERATIONS WITHOUT ANY FURTHER GUIDANCE. (Not raised below).
POINT IV  APPELLANT CHILDS' PRIOR CONVICTIONS SHOULD HAVE BEEN EXCLUDED.
Ketchum raises the following points:
POINT I  THE TRIAL COURT ERRED IN DENYING DEFENSE COUNSEL'S MOTION FOR A MISTRIAL BASED UPON THE PROSECUTION'S ELICITATION OF HIGHLY PREJUDICIAL INFORMATION TO THE JURY IMPLYING THE DEFENDANT'S INCARCERATION.
POINT II  THE TRIAL COURT ABUSED ITS SENTENCING DISCRETION BY IMPOSING A CUSTODIAL SENTENCE DESPITE THE APPARENT APPLICABILITY OF THE PRESUMPTION OF NON-INCARCERATION.
Childs' contention with respect to the ineffective counsel is derived from his allegations that he asked his attorney to take steps to develop evidence that would exculpate him. He asserts in his brief that he asked his trial counsel to obtain fingerprints of the telephone the robber grabbed, the gun allegedly recovered from him and the money taken from him and Ketchum. He apparently thought that his fingerprints would not have been found on the telephone or gun and the store employees' fingerprints would not be found on the money. He also asserts that he asked his attorney to ascertain the identity of the ambulance attendant present when the weapon was recovered.
The standard for the effective assistance of counsel was set forth recently in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There the Supreme Court said that the defendant's attorney has a "... duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at ___, 104 S.Ct. at 2064, 80 L.Ed. at 695. The court further indicated there is a "strong presumption" that counsel's conduct was "within the wide range of reasonable professional assistance[.]" 466 U.S. at ___, 104 S.Ct. at 2066, 80 L.Ed.2d 20 at 694. To overcome this presumption a *646 defendant must: (1) identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment, 466 U.S. at ___, 104 S.Ct. at 2066, 80 L.Ed. 21 at 695, and (2) "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at ___, 104 S.Ct. at 2068, 80 L.Ed.2d at 698 (emphasis added). Thus there is a general requirement that a defendant affirmatively prove prejudice. 466 U.S. at ___, 104 S.Ct. at 2067, 80 L.Ed.2d at 697.
On the record here Childs' claim of ineffective counsel must fail. Firstly, there is no support in the record for Childs' contention that he asked his attorney to take certain steps. In his brief he makes these allegations without reference to the record and at oral argument his attorney agreed the record would not support his assertions. But even if we assume that counsel on his own should have done the things Childs has mentioned and did not do so, or even if Childs asked him to undertake the steps he outlines, we cannot possibly say the attorney's failure to do so impacted on the verdict. It would be a complete speculation to suggest what fingerprints would have been found. Further, it is doubtful that the absence of the employees' prints on the money or Childs' on the weapon or telephone would have been of probative value in view of the probability of obliteration of fingerprints during the passage of time. Additionally, we have no way of knowing what the ambulance attendant saw or did not see. We are satisfied that Childs' claim of ineffectiveness of counsel is meritless and thus must be rejected.
Childs' issue with respect to the jury continuing their deliberations after they reported an impasse is based on a note the jury sent to the judge during the second day of deliberations reciting: "We have reached a verdict for counts five and six. However, we could not reach agreement on count one, and thus, could not proceed to counts two, four, seven and three. *647 Obviously, we have not reached an agreement on count one for Rose [Ketchum]. Please advise." Upon receipt of the note the judge discussed with the attorneys the possible procedures that could be followed, including accepting the verdicts on counts five and six and declaring a mistrial on the remaining counts, declaring a mistrial on the entire case or instructing the jury to continue their deliberations. The attorneys agreed that deliberations should continue. It appears, however, that even if they had not so agreed the judge would have required further deliberations for he had reviewed the matter and concluded that the jury had deliberated only six or seven hours including time for additional instructions. Thus he said: "I am definitely thinking that we should give them more time." After the discussion with counsel the judge sent the following note to the jury: "Members of the jury, we have received your note, and I have discussed it extensively with counsel. At this time I am requesting that you and the members of the jury continue your deliberations."
Childs asserts this instruction was plainly erroneous as the note indicated the judge thought he was guilty and that the jurors in favor of acquittal should thus compromise their votes. He cites United States v. Benavides, 549 F.2d 392 (5 Cir.1977) in support of his contention. There the court in response to a note from the jury stating it could not reach a verdict told the jury to "Take a recess and consider the offense further," a response the court of appeals disapproved on the basis that it implied the trial judge thought the defendant was guilty. Id. at 393. Further Childs contends that more guidance should have been given to the jury in response to its inquiry.
We see no error in what the court did. Certainly a trial judge has discretion to return the jury for further deliberation after they announce their inability to arrive at a verdict. State v. Pontery, 19 N.J. 457, 477 (1955). This court has stated: "... a court may send a jury back for further deliberations when it is not satisfied that all possibilities of reaching a verdict have *648 been exhausted, but it may not coerce or unduly influence the jury in reaching a verdict." State v. Cottone, 52 N.J. Super. 316, 326 (App.Div. 1958), certif. den. 28 N.J. 527 (1959).
The judge upon receipt of the note did not have to conclude a verdict could not be reached. All the jury told him was that at that time it could not reach a verdict. It certainly did not state that it would never reach a verdict. Further, as the trial judge indicated, it had not deliberated extensively. We point out that the jury had heard two full days of testimony and was charged on many counts including numerous possible lesser included offenses. Obviously this was a complicated matter. Extended deliberations were to be expected.
We see no merit to Childs' contention that the trial judge coerced the jury. He simply told it to continue to deliberate. Clearly the judge's handling of the situation was entirely neutral and did not violate the mandate of State v. Czachor, 82 N.J. 392 (1980). See State v. Hozer, 19 N.J. 301, 314 (1955). We also point out that this note was the first communication from the jury indicating it was deadlocked. In such a circumstance requiring further deliberations seems particularly appropriate, especially in view of the fact that the jury had already reached a partial verdict. Finally we point out that after the jury was instructed to continue its deliberations it did so for four hours before it reached a verdict, thus rebutting any suggestion that the jury was coerced by the judge. See State v. Young, 181 N.J. Super. 463, 473 (App.Div. 1981), certif. den. 91 N.J. 222 (1982). Indeed the verdict may be regarded as favorable to Ketchum and thus certainly not reflective of coercive conduct by the judge.
Childs asserts that he was not present in the courtroom when the proceedings arising from the note from the jury were undertaken. He claims that by reason of his absence and his inability to confer with his attorney there was a violation of R. 3:16 and the Sixth and Fourteenth Amendment guarantees to a defendant to be present at every critical stage of trial. He cites *649 in support of his contentions Henderson v. Lane, 613 F.2d 175, 179 (7 Cir.1980), cert. den. 446 U.S. 986, 100 S.Ct. 2971, 64 L.Ed.2d 844 (1980), which stated that a defendant should have been physically present when a juror was substituted during deliberations.
We preliminarily point out that while it certainly would have been good practice to have Childs present when the judge acted on the note, we do not believe defendant's presence was required. See State v. Trent, 157 N.J. Super. 231 (App.Div. 1978), rev'd other grounds 79 N.J. 251 (1979). The proceeding did not involve the receipt of evidence or the confrontation of witnesses. Rather it was a strictly legal matter and there is no indication that his attorney thought his presence necessary. Further we do not entertain the slightest doubt regarding the appropriateness of what the court did. While it does appear that the trial judge had some question regarding the course to follow we are convinced from our reading of the record that this question was attributable largely to the judge's desire to be fair to the parties and be courteous to the attorneys.
But even if we assume that Childs should have been present when the court acted on the note we see no reason to reverse. There is no question but that Childs was convicted at an otherwise error free trial by a noncoerced jury. Thus the only prejudice which Childs can attribute to the judge's requirement of further deliberations is that he was denied the chance of obtaining a mistrial. Indeed Childs admits this in his brief because he contends that the partial verdict should have been accepted and a mistrial declared on the rest of the case. He then argues if that had happened, he might not have been retried or he could have negotiated a favorable disposition. But the purpose of a trial is to obtain a verdict not a mistrial, and thus Childs asks us to protect his interest in obtaining a result to which he was not entitled. In short, Childs obtained exactly the type of termination of the trial to which he had a right, a verdict based on the evidence. Under the circumstances he was *650 not entitled to have a mistrial which could then have served as a prelude to the later negotiation of a favorable result. We also point out that if, as is likely, his presence would not have changed the course followed by the trial judge his claim of error when the judge acted on the note is abstract and is meaningless in itself.
Childs' contention regarding his right to be present at all times at the trial thus raises an issue different in nature than an alleged error going to the integrity of the fact-finding process. See, e.g., State v. R.W., 200 N.J. Super. 560 (App.Div. 1985), certif. granted ___ N.J. ___ (1985). It also differs from a case in which a defendant asserts a constitutional right which, though not undermining the reliability of the result at a trial, implicates other values thought to be important in themselves. For example, while illegally seized property may be perfectly reliable as evidence, the interest protected by the exclusionary rule, the right of a person to be free from unreasonable searches and seizures, is so significant it must be protected even at the cost to the public of obtaining an unreliable result at trial or dismissal of a case. See State v. Ercolano, 79 N.J. 25, 37-38 (1979). By contrast the right to be present at the trial is important because a defendant's presence at the trial will permit him to assist in his defense. Tennessee v. Street, 471 U.S. ___, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985); Douglas v. Alabama, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965); United States v. Johnson, 129 F.2d 954, 958 (3 Cir.1942), aff'd 318 U.S. 189, 63 S.Ct. 549, 87 L.Ed. 704 (1943). But here Childs has advanced the argument that he should have been present not to aid in his defense but rather because in his view had he been present the purpose of the trial could have been frustrated. What he argues for, therefore, is not a right to a reliable verdict but rather a right that no verdict at all be reached. As he had no right to such a result we regard the error, if there was one, as being harmless beyond a reasonable doubt and accordingly not entitling him to a new trial. See State v. Collier, 90 N.J. 117, 123-124 (1982).
*651 Childs' final contention is that the court erred in admitting the following convictions against him for purposes of impeachment: (1) a 1972 conviction for receiving stolen goods, possession of a motor vehicle with a defaced serial number, and attempting to procure a certificate of title to a stolen motor vehicle; (2) a 1974 conviction for attempted larceny; (3) a 1975 conviction for first degree attempted robbery, rape by threat, first degree burglary and first degree robbery and escape, and (4) a 1975 conviction for the possession of controlled dangerous substances, heroin and cocaine. We are satisfied, however, that the judge properly applied the criteria of State v. Sands, supra, 76 N.J. at 127, in reaching his decision and thus this contention is clearly without merit. R. 2:11-3(e)(2).
Ketchum's contention that her motion for a mistrial should have been granted because the prosecutor mentioned she was in custody arose from the following circumstances. During her direct and cross-examination she referred to keeping money inside her bra because money had been taken from her since "I have been here." This reference apparently was to theft from her after she moved to New Jersey. The prosecutor later asked her: "[y]ou stated that you started keeping money in your bra because money has been taken since you have been here. You mean in custody?" Defense counsel immediately objected and then moved unsuccessfully for a mistrial. Even though the judge thought that the jury should not know Ketchum was in custody, he viewed the statement as too insignificant to grant a mistrial.
We see no error in this ruling. The granting of a mistrial is within the sound discretion of the trial judge and should be done only to avoid manifest injustice. State v. DiRienzo, 53 N.J. 360, 383 (1969). Further, in our review we should not reverse on the basis of the denial of the motion unless the ruling was clearly capable of producing an unjust result. State v. LaPorte, 62 N.J. 312, 318 (1973); R. 2:10-2. Here we see no real chance of prejudice. The reference to *652 custody was fleeting and inadvertent. It cannot have surprised the jury to hear about Ketchum being in custody because they knew she had been stopped on the road, taken to the police station and searched. We also point out that the jury acquitted Ketchum of first degree robbery and only convicted her of a lesser offense. Thus the reference hardly seems to have been prejudicial.
Ketchum contends that the trial judge should have issued a curative instruction. See State v. Winter 96 N.J. 640 (1984). While this may be so, the difficulty with the contention is that none was sought. Thus Ketchum can hardly complain about this failure to charge now. In any event we think the entire matter is not significant in view of the totality of the evidence in the case.
We have carefully considered Ketchum's sentence and are satisfied the court did not err in imposing a custodial sentence on her. See State v. Roth, 95 N.J. 334 (1984).
Affirmed.
NOTES
[1] 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).