37 P.3d 1

STATE of Idaho, Plaintiff–Respondent,

v.

Christopher HARRISON, Defendant–
Appellant.

No. 26654.

Court of Appeals of Idaho.

June 19, 2001.

Rehearing Denied Oct. 3, 2001.

Ronaldo A. Coulter, State Appellate Public Defender; Nancy C. Luebbert, Special Deputy Appellate Public Defender, Boise, for appellant. Nancy C. Luebbert argued.

Hon. Alan G. Lance, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

LANSING, Judge.

Christopher Harrison was found guilty of attempted robbery, with a sentence enhancement for use of a deadly weapon. He appeals the denial of his motion for a mistrial based on alleged prosecutorial misconduct. He also challenges the sentence imposed.

## I.

### SUMMARY OF FACTS AND PROCEDURAL HISTORY

In October of 1999, two Boise area fast-food restaurants were robbed by an armed man. The next month, a woman, Connie Barger, was threatened with a handgun in a parking lot. Her assailant pointed the gun at her and demanded that she surrender her purse. She began to scream for help and swung her grocery bag at the criminal. A bystander, David Wall, responded to her screams, and the would-be robber retreated into a dead-end alleyway. Barger called the police while Wall watched for the assailant to emerge from the alley; he did not. When the police arrived, they found the alley empty, but discovered a way that someone could have climbed to the roof. Christopher Harrison was found hiding on the roof; his handgun was found hidden in a nearby drain.

As a result of the Barger incident, Harrison was charged with attempted robbery, Idaho Code §§ 18–306, –6501, subject to a sentencing enhancement for the use of a firearm during the commission of a crime,

I.C. § 19–2520. Police later concluded that Harrison had committed the other two robberies as well. Therefore, two counts of robbery and two sentence enhancement allegations for use of a firearm were added to the charges against Harrison. Harrison pleaded not guilty to all counts, and the case was tried to a jury.

During the trial, the prosecutor asked questions disclosing that Harrison had remained incarcerated from the time of his arrest through the time of trial. On the basis of these revelations, Harrison moved for mistrial. The motion was denied by the court. The prosecution also elicited testimony showing that Harrison liked rock climbing and owned climbing equipment. Subsequently, Detective Kurt McAllister testified that he had examined Harrison's climbing equipment and other property in connection with his investigation of several rooftop burglaries. However, McAllister also testified that he did not now believe that Harrison had any connection to the burglaries. Harrison once again moved for a mistrial. The court denied the motion but gave a curative instruction to the jury.

The jury found Harrison guilty of the attempted robbery of Barger and of the use of a firearm during the commission of that crime, but acquitted him of the other robberies. The district court sentenced Harrison to a unified term of thirty years' incarceration with fifteen years determinate. The court also ordered that the sentence be served consecutively to any sentences Harrison was then serving. Harrison appeals his judgment of conviction, claiming that the district court erred by denying his motion for a mistrial. He also appeals the sentence imposed.

## II.

### DISCUSSION AND ANALYSIS

**A. The District Court Did Not Err in Refusing to Declare a Mistrial.**

Motions for mistrial in a criminal case are controlled by Idaho Criminal Rule 29.1(a), which provides, "A mistrial may be declared upon motion of the defendant, when

there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." Our standard of review of a trial court's refusal to grant a mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct.App.1993). Where error is predicated upon allegations of prosecutorial misconduct, this Court's inquiry is whether the error was harmless beyond a reasonable doubt. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct.App.1983). Any "[e]rror will be deemed harmless if the appellate court is able to declare, beyond a reasonable doubt, that there was no reasonable possibility that the evidence complained of contributed to the conviction." *Shepherd*, 124 Idaho at 58, 855 P.2d at 895.

**1. References to Harrison's incarceration**

While cross-examining a defense witness, the prosecutor asked whether the witness had gone to visit Harrison "while he's been in jail," eliciting a response that disclosed that he was in jail "fairly recently." The defense immediately objected and moved for a mistrial. The district court sustained the objection but declined to grant a mistrial. The prosecutor subsequently directed questions to other witnesses that obliquely implied that Harrison had remained in jail following his arrest. These questions referred to the fact that Harrison did not return to the residence he shared with others after November 9, 1999, the date of the attempted robbery. The defense again unsuccessfully moved for a mistrial.

Harrison argues that the prosecutor's repeated references to his custodial status prejudiced him in much the same way that forcing defendants to wear prison clothes has been found prejudicial. Harrison relies upon *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126, 135 (1976), where the United States Supreme Court held that constitutional protections are violated when a defendant is compelled to wear jail clothing during trial. The Supreme Court noted that the practice may impair the presumption of innocence and, "the defendant's clothing is so likely to be a continuing influence throughout the trial that ... an unacceptable risk is presented of impermissible factors coming into play." *Id.* at 505, 96 S.Ct. at 1693, 48 L.Ed.2d at 131. Many jurisdictions have likewise held or implied that informing the jury that a defendant is in jail is improper because it may raise an inference of guilt. *See State v. Tucker*, 226 Conn. 618, 629 A.2d 1067 (1993); *Haywood v. State*, 107 Nev. 285, 809 P.2d 1272, 1273 (1991); *State v. Martini*, 131 N.J. 176, 619 A.2d 1208 (1993); *State v. Childs*, 204 N.J.Super. 639, 499 A.2d 1041 (1985); *State v. Martinez*, 624 A.2d 291 (R.I.1993).

It is also well recognized, however, that a reference, in front of the jury, to a defendant's incarceration does not necessarily require a new trial. Thus, in *Tucker*, the Connecticut Supreme Court held that the trial court's reference to the defendant as "the prisoner" did not require a mistrial because it was ambiguous and the jury instructions admonished the jury not to infer guilt from the fact of arrest. *Tucker*, 226 Conn. at 627–28, 629 A.2d at 1073. Likewise, in *Haywood*, the prosecutor's improper questions about visits to the defendant in jail were deemed harmless in view of the overwhelming evidence of the defendant's guilt. *Haywood*, *supra*. The court in *Martini* held that the defendant was not prejudiced by the trial court's instruction to the jury that the defen-

dant was incarcerated due to a state law that did not allow for bail in death penalty cases and that the jury should not infer guilt based on his incarceration. *Martini,* 131 N.J. at 237–38, 619 A.2d at 1238–39. In *Childs,* the court concluded that the defendant was not prejudiced by the prosecutor's fleeting and inadvertent reference to the defendant's custody because the jury was informed by the trial testimony that the defendant had been arrested, taken to the police station and searched. *Childs,* 204 N.J.Super. at 651–52, 499 A.2d at 1048. The *Childs* court also relied upon the fact that the jury convicted the defendant only of an offense lesser than the one charged. *Id.* In *Martinez,* the court concluded that a remark implying that the defendant was in custody was not prejudicial because the defendant was constantly accompanied by marshals, from which the jury would have otherwise inferred that he was incarcerated. *Martinez,* 624 A.2d at 294.

■ In the present case, although the prosecutor's references to Harrison's custody status were inappropriate, we are confident that these trial flaws did not affect the outcome. First, these references occurred fleetingly on a few occasions during the course of a six-day trial. Their impact on the jury would be expected to be far less than the impact of seeing a defendant clad in jail garb (and therefore looking like "a criminal") throughout the entire trial. Second, the jury was otherwise informed through testimony that Harrison had been arrested near the scene of the attempted robbery shortly after it occurred. Therefore, they knew that he had been taken into custody. Third, the evidence against Harrison, though perhaps not "overwhelming," was very persuasive. Finally, we note that the jury acquitted Harrison on two of the three charges presented in the trial, which tends to dispel any concern that the verdict may have been based on prejudice or a perception that Harrison was predisposed to crime. Accordingly, we conclude that the allusions to Harrison's incarceration were not prejudicial, and therefore the trial court correctly denied the motion for a mistrial based on these references.

### 2. References to climbing and rooftop burglaries

■ We next consider the mistrial motion based on the prosecutor's elicitation of testimony about Harrison's interest in rock climbing and his possession of climbing equipment. Evidence of Harrison's rock climbing experience and abilities may have been relevant to show that he was capable of climbing from the dead-end alleyway to the roof of the building where he was found, as theorized by the police. However, as the State concedes, the introduction of testimony from a detective that he was interested in examining Harrison's climbing equipment as part of an investigation into several rooftop burglaries was improper. Thus, the question presented is whether the prosecutor's elicitation of the latter testimony amounted to reversible error in view of the same detective's subsequent testimony that Harrison was not connected to the rooftop burglaries and in view of the district court's curative instruction that the jury should not infer that Harrison might have been involved in those crimes.

An analogous issue was presented in *Stoddard,* where the prosecutor elicited testimony from an officer that small "key chain" flashlights, like one possessed by the defendant, are at times used by criminals. The defendant's objection was sustained, but his motion for a mistrial was denied, and the judge issued an instruction disparaging the testimony and instructing the jury to disregard it. This Court held that any error that was not corrected by the trial judge's instruction was harmless beyond a reasonable doubt in light of the strong evidence of the defendant's guilt. *Stoddard,* 105 Idaho at 172, 667 P.2d at 275.

■ Harrison contends that the corrective instruction in this case was inadequate to protect him from the prejudicial effect of McAllister's improper testimony. We disagree. Not only did the court instruct the jury that there was no connection between Harrison and the rooftop burglaries, but the detective also testified that Harrison's climbing equipment was not connected to those crimes. Although it was improper for the prosecutor to present irrelevant evidence im-

508

plying a nonexistent link between Harrison and the rooftop burglaries, the witness's testimony exculpating Harrison and the judge's instruction were sufficient to prevent prejudice. In our judgment, this testimony was harmless beyond a reasonable doubt and did not deprive Harrison of a fair trial.

### 3. Cumulative error

Harrison argues that, when viewed as a whole, the errors in the trial combined to deprive him of a fair trial. He invokes the cumulative error doctrine, which "is predicated upon the proposition that 'an accumulation of irregularities, each of which in itself might be harmless, may in the aggregate show the absence of a fair trial.'" *State v. Vandenacre*, 131 Idaho 507, 513, 960 P.2d 190, 196 (Ct.App.1998) (quoting *State v. Campbell*, 104 Idaho 705, 719, 662 P.2d 1149, 1163 (Ct.App. 1983)).

Both the prosecutor's questions referencing Harrison's confinement and the question implying a possible connection between Harrison and the rooftop burglaries were improper, but we have held that, when viewed singly, neither of these episodes of prosecutorial misconduct was prejudicial in the context of the overall trial. We must now consider whether these incidents, viewed in the aggregate, were harmless beyond a reasonable doubt. We conclude that when viewed cumulatively, they remain harmless error. The evidence of Harrison's guilt was compelling. In addition, the fact that the jury acquitted Harrison on two of the three charged offenses discredits his argument that the jury may have been moved to base a verdict on prejudice created by the prosecutor's improprieties. We are persuaded that the result of Harrison's trial would have been the same absent the prosecutorial misconduct. Therefore, the district court's orders denying Harrison's motions for a mistrial are affirmed.

### B. The District Court Did Not Abuse Its Sentencing Discretion.

As his final issue on appeal, Harrison contends that his sentence is unduly harsh. When a sentence is challenged on appeal, we examine the record, focusing upon the nature of the offense and the character of the of-

fender, to determine if there has been an abuse of the sentencing court's discretion. *State v. Young*, 119 Idaho 510, 808 P.2d 429 (Ct.App.1991). The defendant bears the burden to show that the sentence is unreasonably harsh in light of the primary objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown*, 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982).

Harrison was found guilty of pointing a loaded handgun at an unarmed woman in order to take her purse. This demonstrates that he is indifferent to the safety and rights of others. At the time this occurred, Harrison was on felony probation, having been previously convicted of burglary and aggravated assault. The aggravated assault conviction stemmed from Harrison's stabbing a man in the neck and abdomen. Harrison had previously been given an opportunity for rehabilitation through the retained jurisdiction program, but continued his criminal behavior. He did not accept responsibility for his conduct, as he continued to assert his innocence in the present case and also denied the stabbing for which he had previously been convicted. On the record presented in this case, and considering both the seriousness of this offense and the character of the offender, we cannot say that the district court abused its discretion in the sentence imposed.

### III.

### CONCLUSION

Harrison has not shown that the court erred in refusing to declare a mistrial. He has also failed to demonstrate that his sentence is excessive. Therefore, Harrison's judgment of conviction and sentence are affirmed.

Judge PERRY and Judge Pro Tem GUTIERREZ concur.