**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0686-17

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANTHONY M. GRAZIANO,

      Defendant-Appellant.

_____

> Argued January 12, 2021 – Decided April 15, 2021
>
> Before Judges Fisher, Gilson, and Moynihan.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 13-03-0374.
>
> John A. Albright, Designated Counsel, argued the cause for appellant Anthony M. Graziano (Joseph E. Krakora, Public Defender, attorney; John A. Albright, on the briefs).
>
> William P. Miller, Assistant Prosecutor, argued the cause for respondent (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, of counsel and on the briefs; Nicole Paton, Assistant Prosecutor, and John J. Scaluti, Legal Assistant, on the briefs).

PER CURIAM

Defendant Anthony Graziano and co-defendant Aakash Dalal were indicted for thirty crimes related to the fire-bombing and vandalism of four Jewish synagogues and a Jewish community center. The co-defendants were tried separately. A jury convicted defendant of twenty-one crimes: first-degree terrorism, N.J.S.A. 2C:38-2(a); two counts of first-degree aggravated arson, N.J.S.A. 2C:17-1(a)(2) and N.J.S.A. 2C:2-6; three counts of first-degree conspiracy to commit arson, N.J.S.A. 2C:17-1 and N.J.S.A. 2C:5-2; first-degree attempted arson, N.J.S.A. 2C:17-1(a) and N.J.S.A. 2C:5-1; third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2), as a lesser included offense of attempted murder; three counts of first-degree bias intimidation, N.J.S.A. 2C:16-1(a)(1) and N.J.S.A. 2C:2-6; two counts of fourth-degree bias intimidation, N.J.S.A. 2C:16-1(a)(1); three counts of second-degree possession of a destructive device for unlawful purpose, N.J.S.A. 2C:39-4(c); three counts of third-degree possession of a destructive device, N.J.S.A. 2C:39-3(a); second-degree hindering apprehension or prosecution for terrorism, N.J.S.A. 2C:38-4(a) and N.J.S.A. 2C:2-6; and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) and N.J.S.A. 2C:2-6.

2

A-0686-17

Defendant was sentenced to an aggregate prison term of thirty-five years, with thirty years of parole ineligibility and five years of parole supervision after release.  He appeals from his convictions and sentence.  In a separate published opinion, we analyzed and rejected defendant's constitutional challenges to the New Jersey Anti-Terrorism Act, N.J.S.A. 2C:38-1 to -5 (the Act).  State v. Dalal, ___ N.J. ___ (App. Div. 2021).  In this opinion, we analyze and reject defendant's additional arguments.

I.

In December 2011 and January 2012, four Jewish synagogues and a Jewish community center were subject to arson, attempted arson, or vandalism. Following an investigation, defendant and co-defendant Dalal were charged with multiple crimes related to those acts.  We have provided a detailed description of the facts and some of the procedural history in our published opinion.  Here, we summarize additional facts and procedural history relevant to defendant's non-Anti-Terrorism Act-based challenges to his convictions and sentence.

During an investigation of the arsons, law enforcement personnel identified Graziano as a suspect.  The Bergen County Prosecutor's Office (BCPO) then applied for and obtained a warrant to search the home where

3

defendant lived with his parents and to obtain biological samples from defendant. During the January 23, 2012 search of defendant's home, officers seized a number of items including computers, burnt batting gloves, duct tape, and a book entitled "The Anarchist Cookbook," which contained instructions on how to make Molotov cocktails.

After the search, defendant agreed to go to the BCPO to provide biological samples and to be interviewed. While being transported, a detective read defendant his Miranda [1] rights. Defendant acknowledged that he understood each right.

At the BCPO, defendant was taken to an interview room that was equipped with video and sound recording. He was again read his Miranda rights, acknowledged that he understood those rights, and agreed to speak with the officers. Beginning late in the evening of January 23 until the early morning hours of January 24, defendant was extensively questioned by several officers.

For the first several hours of questioning, defendant denied any involvement in the vandalisms and arsons. At approximately 4:50 a.m. on January 24, 2012, the officers who were questioning defendant decided that they were done interviewing him and stopped the recording equipment.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

A-0686-17

A lieutenant who had been watching the interview on his office computer headed towards the interview room. As the lieutenant was walking towards the interview room, he stopped to speak with defendant's mother who was in a waiting area. Defendant's mother asked if she could speak with her son and, after getting defendant's permission, the lieutenant allowed her to come into the room. Eventually, the mother became emotional and left the room, and the officers continued to question defendant for about thirty minutes without recording their conversation.

At approximately 5:20 a.m., the recording equipment was turned back on and an officer confirmed with defendant that they were "back on the record." The lieutenant then confirmed with defendant that while they were off the record, defendant had admitted to throwing a Molotov cocktail at the Rutherford temple. On the record, defendant admitted that he had committed the arsons at the Paramus synagogue on January 3, 2012, and at the Rutherford synagogue on January 11, 2012. Defendant also admitted that he had targeted Jewish synagogues to try to send a message to Jewish people.

Before trial, defendant moved to suppress his statement. An evidentiary hearing was conducted, and on April 6, 2016, the trial judge entered an order denying the motion to suppress and issued a written opinion supporting that

5

ruling. The trial court found that the time and length of the interrogation was not unduly coercive. Furthermore, the court rejected defendant's argument that his mother was an agent of the State utilized to coerce defendant into an involuntary confession. Instead, the court found that the officers did not direct defendant's mother to elicit any information from him, defendant consented to speak to his mother, and there was no evidence to suggest that defendant's will was overborne by the brief conversation with his mother. Finally, the court found that the re-administration of full Miranda warnings after defendant spoke to his mother was not required.

At trial, the State presented evidence that defendant was physically present and participated in the vandalism of the two synagogues that took place in December 2011. The State also presented evidence that defendant acted as the principal in the arsons and attempted arsons at the two synagogues and Jewish community center in January 2012. In total, the State presented nineteen witnesses and introduced 213 exhibits.

Defendant elected not to testify, but he called two witnesses: his mother and the BCPO lieutenant who had been involved in questioning him. After hearing all the evidence, the jury convicted defendant of ten first-degree crimes,

A-0686-17

four second-degree crimes, five third-degree crimes, and two fourth-degree crimes.

II.

In addition to his constitutional challenges to the Anti-Terrorism Act, defendant advances four other arguments:

POINT [I] – THE DENIAL OF DEFENDANT'S MOTION TO SUPPRESS HIS CONFESSION WAS REVERSIBLE ERROR BECAUSE AT THE MOMENT THE INTERROGATION WAS "OVER," AND AFTER DEFENDANT'S MOTHER CONVINCED HIM TO "TELL THE TRUTH," FRESH MIRANDA WARNINGS WERE REQUIRED BEFORE NEW CUSTODIAL INTERROGATION COULD BEGIN AND A VALID WAIVER COULD OCCUR.

POINT [II] – THE TRIAL COURT'S FAILURE TO PROERLY [sic] INSTRUCT THE DEADLOCKED JURY WAS REVERSIBLE ERROR. AFTER THE JURY REPORTED IT WAS DEADLOCKED ON THE TERRORISM COUNT AND TWO OTHER COUNTS, THE TRIAL COURT'S REFUSAL TO ISSUE ANY INSTRUCTIONS ASIDE FROM ORDERING DELIBERATIONS TO CONTINUE WITH A WARNING THAT THE JURORS WOULD BE SENT HOME AT FOUR O'CLOCK ON FRIDAY AFTERNOON RESULTED IN A VERDICT JUST AN HOUR LATER AND A MANIFEST DENIAL OF JUSTICE.

POINT [III] – THE LOWER COURT'S JURY INSTRUCTIONS ON TERRORISM DEPRIVED DEFENDANT OF A FAIR TRIAL, BECAUSE THEY

7

DID NOT DISTINGUISH OR EXPLAIN THE CIRCUMSTANCES UNDER WHICH PROOF BEYOND A REASONABLE DOUBT AS TO ONE INDIVIDUAL VICTIM VERSUS PROOF AS TO FIVE OR MORE VICTIMS IS REQUIRED TO SUSTAIN A TERRORISM CONVICTION; NOR DID THE INSTRUCTIONS OR THE VERDICT SHEET IDENTIFY A SINGLE SPECIFIC VICTIM.

POINT [IV] – THE THIRTY-FIVE YEAR AGGREGATE SENTENCE IMPOSED, WITH A THIRTY-YEAR PERIOD OF PAROLE INELIGIBILITY IS EXCESSIVE, FAILED TO GIVE SUBSTANTIAL WEIGHT TO DEFENDANT'S YOUTH (AGE 19) AS A NON-STATUTORY MITIGATING FACTOR, [AND] IMPROPERLY APPLIES PRESUMPTIVE TERMS AND FACTORS FOR CONSECUTIVE SENTENCING[.]

Defendant also moved to join in two arguments raised by co-defendant Dalal. Specifically, defendant seeks to challenge the denial of the motion to suppress data recovered from his computer, which was seized when his residence was searched. We now grant that motion in part and deny it in part. Defendant will be permitted to join in the portion of the argument seeking to suppress the evidence seized because the warrant allegedly lacked probable cause. Defendant will not be permitted to join in the argument challenging the admission of the data recovered from the computer because he did not join in or make that argument before the trial court.

8

We reject defendant's argument that there was insufficient probable cause to support the warrant. We have explained the reasons for that ruling in a separate unpublished opinion we issued today addressing the non-Anti-Terrorism Act-based arguments raised by Dalal. State v. Dalal, No. A-5556-16 (App. Div. 2021) (slip op. at 17-19).

1.     The Motion to Suppress

Defendant argues that law enforcement personnel ended his interview, then brought his mother into the interrogation room, and because that was an intervening event, the officers were required to give him fresh Miranda warnings before starting a second interview. We reject this argument.

"In determining the voluntariness of a defendant's confession, we traditionally look to the totality of the circumstances to assess whether the waiver of rights was the product of a free will or police coercion." State v. Nyhammer, 197 N.J. 383, 402 (2009). Among "the important factors" to consider in determining the validity of a Miranda waiver are whether the suspect understood both that he did not have to speak and the consequences of choosing to speak. Id. at 401-02 (citing State v. Magee, 52 N.J. 352, 374 (1968)). "Generally, barring intervening events, '[o]nce a defendant has been apprised of

his constitutional rights, no repetition of these rights is required.'" Id. at 401 (alteration in original) (quoting State v. Melvin, 65 N.J. 1, 14 (1974)).

Defendant was given his full Miranda warnings twice, once when he was being transported and the second time at the BCPO. The trial court found that defendant understood and waived those rights. Defendant was then questioned for over four hours and the officers decided to end the interview. Before informing defendant of that decision, however, one of the officers spoke with defendant's mother and she asked to speak with defendant.

After defendant spoke with his mother, the officers continued their questioning and defendant admitted his involvement in two of the incidents. The officers then turned the recording equipment back on to confirm with defendant their conversation while the recording equipment was off, and defendant admitted his involvement in the arsons at two synagogues.[2]

In denying defendant's motion to suppress his statement, the trial court found the testimony of two officers involved in his questioning to be

---

[2] Speaking with defendant when the recording equipment was turned off was not appropriate. See R. 3:17 (requiring electronic recording of custodial interrogation when the suspect is charged with certain crimes, such as aggravated arson). Nevertheless, here we discern no reversible error because the record established that defendant understood his rights and confirmed on the record what he had told the officers off the record.

"exorbitantly credible." The trial court also found that there was no intervening event that warranted the re-administration of Miranda warnings. Those findings are supported by substantial credible evidence and we discern no reason to reject them. See id. at 409 (explaining that factual findings of trial courts are to be accepted on appeal if they "are supported by sufficient credible evidence in the record").

Defendant relies on cases where the police questioned a defendant after he had affirmatively invoked his Miranda rights. See State v. Harvey, 121 N.J. 407 (1990); State v. Hartley, 103 N.J. 252 (1986); State v. McCloskey, 90 N.J. 18 (1982). Those cases are distinguishable because defendant never invoked any of his Miranda rights. See Harvey, 121 N.J. at 417-25 (defendant invoked his right to silence and the police did not issue fresh Miranda warnings before resuming questioning of defendant); Hartley, 103 N.J. at 260-71 (defendant invoked his right to silence and when the police resumed questioning they failed to provide fresh Miranda warnings); McCloskey, 90 N.J. at 21-29 (defendant had stated that he wanted to remain silent and thereafter indicated he was willing to speak).

A-0686-17

2. The Instruction to Continue Deliberations

After hearing evidence for ten days, the jury began its deliberations on the afternoon of May 26, 2016. The following day, after several more hours of deliberation, the jury reported that it was deadlocked on certain counts, including the terrorism charge.

Defendant's counsel requested the judge to instruct the jury in some detail concerning their obligation to continue deliberations. See Model Jury Charges (Criminal), "Judge's Instructions on Further Jury Deliberations" (approved Jan. 2013); see also State v. Czachor, 82 N.J. 392, 405 (1980). The trial judge denied that request and instead instructed the jury to continue deliberating since it had only deliberated less than five hours in total. The judge also pointed out that it was afternoon and that he would be sending them home at 4 p.m. if they did not reach a verdict. Approximately one hour later, the jury reported its verdict.

Defendant argues that the trial court erred in not providing a more detailed instruction and by referring to the time as a means of coercing a verdict. We disagree.

When a jury indicates that it is deadlocked on all or certain charges, the trial court must determine if that deadlock is "intractable." State v. Ross, 218 N.J. 130, 145 (2014). After considering "such factors as the length and

12

complexity of [the] trial and the quality and duration of the jury's deliberations," the court can instruct the jury to continue its deliberations. Id. at 144 (quoting Czachor, 82 N.J. at 407). Accordingly, a trial judge "has discretion to require further deliberations after a jury has announced its inability to agree." State v. Harris, 457 N.J. Super. 34, 50 (App. Div. 2018) (quoting State v. Johnson, 436 N.J. Super. 406, 422 (App. Div. 2014)). In giving those instructions, however, a trial judge "may not coerce or unduly influence the jury in reaching a verdict." State v. Carswell, 303 N.J. Super. 462, 478 (App. Div. 1997) (quoting State v. Childs, 204 N.J. Super. 639, 647-48 (App. Div. 1985)).

Our review of the record satisfies us that there was no abuse of discretion at defendant's trial. The trial judge appropriately determined that the jury had not been deliberating for that many hours and he appropriately directed them to continue their deliberations. Given that the jury had been given instructions the day before and that they had a written copy of the instructions with them in the jury room, we discern no error in the trial judge's decision not to give a longer instruction on how to continue their deliberations.

We also discern no evidence of coercion. There was nothing inappropriate, given the totality of the circumstances, in the trial judge

13

reminding the jury that if they did not reach a verdict, they would be sent home later in the afternoon.

3.     The Jury Instructions on the Terrorism Charge

Defendant contends that the jury was permitted to reach a verdict that was not unanimous because neither the jury instructions nor the verdict sheet identified specific victims. Defendant also argues that the jury expressed confusion concerning the terrorism charge that compounded the problem. Defendant did not raise these issues at trial and, therefore, we review them for plain error. State v. Singleton, 211 N.J. 157, 182 (2012); R. 2:10-2. We discern no plain error.

"Appropriate and proper jury instructions are essential to a fair trial." State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Green, 86 N.J. 281, 287 (1981)). The instructions act as "a road map to guide the jury" and a "trial judge must deliver 'a comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Ibid. When there is no objection and when we are reviewing for plain error, we look for legal problems in the charge that prejudicially affected the substantive rights of defendant and convince us that they "possessed a clear capacity to bring about an unjust result." State v. Chapland, 187 N.J.

14

275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)); see also R. 2:10-2.

The trial court gave the jury detailed instructions on the terrorism charge. Concerning the second element, the court explained that the State had to prove beyond a reasonable doubt that defendant acted "with the purpose to promote an act of terror or to terrorize five or more persons." The court then defined "terror" and "promote." The court then explained:

> Here the State alleges the defendant['s] purpose in committing the arsons or attempted arsons was to menace the Jewish [c]ommunity or segment[s] of it by placing it [in] fear of death or serious bodily injury; or [t]o terrorize five or more persons.
> . . . .
> Here the State alleges the defendant acted with the purpose of terrorizing five or more persons, namely, the Jewish [c]ommunity or segment[s] of it.

The court also gave the jury a verdict sheet that required them to answer separate questions on whether they were finding that defendant acted with the purpose to promote an act of terror or with the purpose to terrorize five or more persons.

We hold that those instructions were appropriate and consistent with the Anti-Terrorism Act. Consistent with the Act, the instructions informed the jury that they must determine if defendant acted with the purpose to terrorize a group or segment of society. The instructions then identified that group as the Jewish

15

community.  The jury was also instructed to state whether they were finding that defendant had the purpose to (1) promote an act of terror or (2) terrorize five or more people.  The verdict sheet reflects that the jury found that defendant acted with both purposes.

We also reject defendant's contention that the jury exhibited confusion concerning the terrorism charge.  Instead, the jury asked for clarification concerning whether it needed to find both the purpose to promote an act of terror and the purpose to terrorize five or more persons.  The trial court correctly informed the jury that it needed to find only one or the other.  That instruction was consistent with the plain language of the Act.  See N.J.S.A. 2C:38-2(a)(1) and (2).

4.     The Sentence

Defendant challenges his sentence on several grounds, contending the sentencing court (1) did not properly consider that defendant was nineteen years old when he committed the crimes; (2) did not properly evaluate the required factors in imposing consecutive sentences; and (3) improperly imposed

presumptive sentences for defendant's convictions of first-degree bias intimidation.[3]

We review sentencing determinations under a deferential standard. State v. Grate, 220 N.J. 317, 337 (2015) (quoting State v. Lawless, 214 N.J. 594, 606 (2013)). We "do[] not substitute [our] judgment for the judgment of the sentencing court." Lawless, 214 N.J. at 606 (first citing State v. Cassady, 198 N.J. 165, 180 (2009); and then citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Instead, we will affirm a sentence unless

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Miller, 237 N.J. 15, 28 (2019) (alteration in original) (quoting State v. Fuentes, 217 N.J. 57, 70 (2014)).]

When sentencing a defendant for multiple offenses, "such multiple sentences shall run concurrently or consecutively as the court determines at the

---

[3] Defendant also challenged his sentence under the Anti-Terrorism Act arguing that his thirty-two-year sentence violated his Eighth Amendment rights because it was cruel and unusual. We rejected that argument in our published opinion. Dalal, ___ N.J. Super. ___ (slip op. at 33-37).

time of sentence[.]" N.J.S.A. 2C:44-5(a). In <u>State v. Yarbough</u>, 100 N.J. 627, 644-45 (1985), our Supreme Court established criteria that a sentencing court must consider when deciding whether to impose consecutive sentences. Namely, the court must evaluate whether

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims; [and]
>
> (e) the convictions for which the sentences are to be imposed are numerous[.]
>
> [<u>Id.</u> at 644.]

In sentencing defendant, the judge considered the aggravating and mitigating factors. <u>See</u> N.J.S.A. 2C:44-1(a) and (b). The judge found aggravating factor nine, the need for deterrence, N.J.S.A. 2C:44-1(a)(9), and mitigating factor seven, the lack of a criminal history, N.J.S.A. 2C:44-1(b)(7). Pointing out that fortunately defendant's conduct caused no serious physical injuries to anyone, the judge found that those factors were in equipoise.

A-0686-17

The judge then sentenced defendant to thirty-two years in prison for the terrorism conviction. In imposing that sentence, the judge correctly noted that the sentencing range for a first-degree conviction of terrorism was from thirty years to life imprisonment. N.J.S.A. 2C:38-2(b)(1). For the convictions of fourth-degree bias intimidation related to the two synagogues that were vandalized, the judge sentenced defendant to eighteen months in prison and ran those sentences consecutive to each other and consecutive to the terrorism sentence. On defendant's three convictions for first-degree bias intimidation based on the predicate acts of first-degree arson, the judge sentenced defendant to twenty years, but ran those sentences concurrent to each other and the terrorism sentence. On the convictions for first-degree aggravated arson, the judge sentenced defendant to fifteen years in prison with fifteen years of parole ineligibility, running those sentences consecutive to each other, but concurrent to all other sentences, including the terrorism sentence. For the remaining convictions, the judge either merged the convictions or imposed concurrent sentences. Consequently, in aggregate defendant was sentenced to thirty-five years in prison, with thirty years of parole ineligibility.

A. Defendant's Age

The judge was clearly aware of defendant's age. In imposing the sentence, he pointed out when defendant was born, his age at the time of sentencing (twenty-five years old), and his age at the time the crime was committed.

When defendant was sentenced in July 2017, the age of a defendant was not an independent mitigating factor. Effective October 19, 2020, if a defendant is under twenty-six years of age at the time of the commission of the crime, age is a mitigating factor. See N.J.S.A. 2C:44-1(b)(14). That new mitigating factor, however, applies prospectively and does not apply to defendant. The Legislature did not address whether the amendment adding mitigating factor fourteen should be given retroactive application, but the effective date evidences the Legislature's intent that the law should be applied prospectively. See State v. J.V., 242 N.J. 432, 435 (2020); Pisack v. B & C Towing, Inc., 240 N.J. 360, 370 (2020).

Here, the sentencing judge appropriately considered defendant's age. Moreover, the aggregate sentence was not affected by defendant's age. The judge sentenced defendant to thirty-two years in prison for first-degree terrorism, which is two years above the statutory minimum of thirty years. N.J.S.A. 2C:38-2(b)(1). The judge also imposed sentences of eighteen months

for the two convictions for fourth-degree bias intimidation. N.J.S.A. 2C:43-6(a)(4).

B. The Sentences for First-degree Bias Intimidation

The sentencing range for a first-degree bias intimidation conviction is between fifteen and thirty years, "with a presumptive term of [twenty] years." N.J.S.A. 2C:16-1(c). In sentencing defendant, the judge referenced that presumption and sentenced defendant to twenty years in prison on each of his three convictions for first-degree bias intimidation but ran those sentences concurrent to each other and the terrorism sentence. Defendant argues that a remand is necessary because the judge referred to the presumptive term. We disagree.

In State v. Natale, our Supreme Court eliminated statutory presumptive prison terms because they could violate the Sixth Amendment right to trial by jury if a sentence higher than the presumptive term is imposed based on a judge's findings of aggravating factors. 184 N.J. 458, 466, 484 (2005). The Court explained that the imposition of "a sentence above the presumptive statutory term based solely on a judicial finding of aggravating factors, other than a prior criminal conviction, violates a defendant's Sixth Amendment jury trial guarantee." Id. at 466. The Court also explained that "[w]ithout presumptive

21

terms, the 'statutory maximum' authorized by the jury verdict . . . is the top of the sentencing range for the crime charged[.]" Id. at 487.

Defendant was sentenced at the statutory "presumptive" term, and not above it. Indeed, he was sentenced to the mid-range of twenty years, since the jury verdict authorized a sentence at the top of the range; that is, thirty years. N.J.S.A. 2C:16-1(c). See Natale, 184 N.J. at 487. Unlike Natale, defendant's Sixth Amendment right was not violated because he was not sentenced above the statutory presumptive sentence. See State v. Adams, 194 N.J. 186, 209 (2008) (refusing to remand for resentencing under Natale because defendant was "not sentenced above the then-existing presumptive sentence").

Moreover, even if the sentencing court erred by imposing a presumptive term, here the error was harmless because the sentences for the first-degree bias intimidation convictions all ran concurrent to defendant's thirty-two-year sentence for terrorism. See State v. King, 372 N.J. Super. 227, 245-46 (App. Div. 2004) (noting that, even assuming the trial court improperly increased the term on one conviction, "it was harmless" because the increased term was "concurrent to and far shorter than the uncontested sentence" on another conviction). Accordingly, defendant is not entitled to a remand for resentencing.

22

C. The Consecutive Sentences

In imposing consecutive sentences, the judge ran the convictions related to bias intimidation at two separate synagogues consecutive to the terrorism sentence. In doing so, the judge referenced Yarbough and we are satisfied that the judge appropriately considered the factors for imposing consecutive sentences. See N.J.S.A. 2C:44-5(a).

## III.

Defendant's convictions and sentences are affirmed. In essence, defendant seeks to present his crimes as immature behaviors, which were egged on by co-defendant Dalal. The jury rejected that argument, apparently focusing on the significant acts of terrorism and the hatred they reflected. We discern no reversible error.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0686-17