64 P.3d 967

STATE of Idaho, Plaintiff–Respondent,

v.

Brian D. OLSON, Defendant–Appellant.

No. 27881.

Court of Appeals of Idaho.

Feb. 3, 2003.

---

Robert R. Chastain, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent.

LANSING, Chief Judge.

Brian Olson appeals from his conviction for misdemeanor domestic battery arising from an attack on his girlfriend with whom he cohabited. Olson challenges the conviction on the basis that the definition of "household member" in the domestic violence statute does not encompass unmarried cohabitants or alternatively, that the definition is unconstitutionally vague. He also asserts that the prosecutor engaged in misconduct during her closing argument by referring to a document that was not admitted into evidence. We affirm.

**440**

## I.

### BACKGROUND

Olson and the victim, Kimberly Cantlen, had been living together in an intimate relationship. According to the State's evidence at trial, Olson told Cantlen he wanted her out of his life and then punched her on the left side of her face and on her left arm and kicked her in the side and in the lower back, literally kicking her out of a truck in which they had been sitting.

Olson was initially charged with felony domestic battery, Idaho Code § 18–918(3) (1998),[1] but the charge was later amended to misdemeanor domestic battery, I.C. § 18–918(5) (1998). After the State rested its case at trial, Olson moved for a judgment of acquittal pursuant to Idaho Criminal Rule 29(a) on the ground that the State's evidence was insufficient to show that he and Cantlen were "household members" as that term is defined in I.C. § 18–918(1). The motion was denied.

The jury found Olson guilty, and he appealed the resulting judgment of conviction to the district court, which affirmed. Olson now appeals to this Court, raising issues regarding the interpretation of the statute under which he was prosecuted, the constitutionality of the statute, and prosecutorial misconduct during his trial.

## II.

### ANALYSIS

#### A. Meaning of "Household Member"

We begin with Olson's contention that his acts of battering his cohabitant girlfriend did not fall within the purview of the domestic battery statute, which prohibits battery by one "household member" against another "household member." He argues that the definition of "household member" contained in I.C. § 18–918(1) does not include a live-in girlfriend. Because this is an issue of law, we exercise *de novo* review. *State v. Richards*, 127 Idaho 31, 34, 896 P.2d 357, 360 (Ct.App.1995).

When called upon to interpret a statute, we begin with an examination of its literal words. *State, Dep't of Health & Welfare ex rel. Lisby v. Lisby*, 126 Idaho 776, 779, 890 P.2d 727, 730 (1995); *Grand Canyon Dories v. Idaho State Tax Comm'n*, 124 Idaho 1, 5, 855 P.2d 462, 466 (1993); *State v. McKeeth*, 136 Idaho 619, 628, 38 P.3d 1275, 1284 (Ct.App.2001); *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001). The statutory language is to be given its plain, obvious, and rational meaning. *Lisby*, 126 Idaho at 779, 890 P.2d at 730. A statute is to be construed as a whole without separating one provision from another. *George W. Watkins Family v. Messenger*, 118 Idaho 537, 539, 797 P.2d 1385, 1387 (1990). In attempting to discern and implement the intent of the legislature, a court may seek edification from the statute's legislative history and contemporaneous context at enactment. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints v. Ada County*, 123 Idaho 410, 416, 849 P.2d 83, 89 (1993). However, if the statutory language is clear and unambiguous, a court need merely apply the statute without engaging in any statutory construction. *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 727, 732, 947 P.2d 400, 405 (1997).

The statutory definition in question here is in I.C. § 18–918(1), which states:

> For the purpose of this section, "household member" means a person who is a spouse, former spouse, or a person who has a child in common regardless of whether they have been married or a person with whom a person is cohabiting, whether or not they have married or have held themselves out to be husband and wife.

Olson argues that this language encompasses only present and former spouses, persons who have held themselves out to be married, and persons who have a child in common and are living together. The definition excludes, he asserts, cohabiting couples who have never been married, purported to be married, or had a child. Olson's argument focuses upon

1. Idaho Code § 18–918 has been subsequently amended, 2000 Idaho Sess. Laws, ch. 358, § 1, at 1193.

the absence of a comma after the phrase, "regardless of whether they have been married." According to Olson, the lack of a comma at that location indicates that the clause that follows, "or a person with whom a person is cohabiting, whether or not they have married," does not describe a separate class of persons to whom the statute applies but, rather, is "modified and limited by" the clause "a person who has a child in common." Under this interpretation, the statute does not cover unmarried couples who cohabit, unless they have a child in common.

Examining the statutory definition as a whole, we conclude that it plainly encompasses: (1) spouses, (2) former spouses, (3) persons who have a child in common regardless of whether they have been married, and (4) persons who are cohabiting, regardless of whether they have been married or held themselves out to be married. Olson's interpretation could not be the meaning intended by the legislature, for under his interpretation the words "whether or not they have married" would be utterly superfluous and repetitive of the earlier phrase "regardless of whether they have been married." Giving a sensible meaning to all of the words of the definition requires the conclusion that "a person with whom a person is cohabiting, whether or not they have been married or have held themselves out to be husband and wife" is a category of "household member."

The legislative history of I.C. § 18–918 confirms this conclusion. Prior to 1998, § 18–918(1) did not include persons who merely cohabited together. The previous definition of "household member" was: "a person who is a spouse, former spouse, or a person who has a child in common regardless of whether they have been married or have lived together at any time." In 1998, the definition was amended, adding the language that is at issue here. 1998 Idaho Sess. Laws, ch. 420, § 1 at 1324. According to the statement of purpose for the amending legislation, Senate Bill 1403, the amendment was to "provide a broader definition of domestic violence ... to include people who cohabited with each other."

Accordingly, the statute, as it existed at the time of Olson's offense in December 1998, included cohabitants who had never been married as a category of "household members." Olson's battery of Cantlen was thus enjoined by this statute.

## B. Vagueness Challenge

Olson also argues that the statute's definition of "household member" is unconstitutionally vague. The vagueness doctrine is grounded on the precept that criminal statutes must define offenses with sufficient clarity to (1) give persons a reasonable opportunity to know what conduct is prohibited so that they may act accordingly, and (2) avoid arbitrary and discriminatory enforcement. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *State v. Richards*, 127 Idaho 31, 37, 896 P.2d 357, 363 (Ct.App.1995). In order to succeed on his vagueness challenge, Olson must show that the statute did not give fair notice that his particular conduct was prohibited. *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. 1186; *Parker v. Levy*, 417 U.S. 733, 755–57, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *State v. Wees*, 138 Idaho 119, 58 P.3d 103 (Ct.App.2002). Consequently, one who has received fair warning of the criminality of his own behavior is not entitled to raise a vagueness challenge on the basis that the statutory language leaves uncertainty about its applicability to other conduct that is not involved in the case at hand. *Hoffman Estates*, 455 U.S. at 495, 102 S.Ct. 1186; *Parker*, 417 U.S. at 755–56, 94 S.Ct. 2547; *Wees*, 138 Idaho at ——, 58 P.3d at 107.

As we have held in section II(A) above, I.C. § 18–918 plainly applies to persons who cohabit in an intimate relationship. The statute gave Olson fair warning that his conduct was prohibited. Olson's contention that the statute is ambiguous as to whether it applies to persons who are "cohabiting" in other circumstances, as in a dormitory or a fraternity house, is unavailing, for he has no standing to challenge the vagueness of the statute as it might be hypothetically applied to the conduct of others. *Parker*, 417 U.S. at 755–56, 94 S.Ct. 2547.

## C. Prosecutorial Misconduct

Olson next argues that he is entitled to a new trial due to prosecutorial misconduct during closing argument. While testifying in his defense, Olson was cross-examined regarding a tort claim that he had filed against a number of Valley County and City of McCall officials. The tort claim alleged that the officials had conspired to bring false felony charges against Olson for the purpose of terminating him from his employment as the city manager for the City of McCall. During the cross-examination, Olson was handed a copy of the tort claim, but the claim was not admitted into evidence. During closing argument, the prosecutor told the jury, "Take a look at the tort claim. 'Conspire' is mentioned several times.... You saw the document by the defendant." Olson properly objected that the tort claim had never been admitted into evidence, which objection was sustained. The prosecutor then continued: "Okay. Recall the defendant's testimony with regards to the tort claim."

■ Olson claims error in the trial because the prosecutor engaged in misconduct by waiving before the jury a document that had not been admitted into evidence. Olson does not, however, identify an adverse ruling at trial that forms the basis for the assignment of error. When Olson objected to the prosecutor's argument, the objection was sustained. There is, therefore, no ruling unfavorable to Olson for this Court to review or reverse. *See State v. Barnett,* 133 Idaho 231, 235, 985 P.2d 111, 115 (1999); *State v. Monteith,* 53 Idaho 30, 34, 20 P.2d 1023, 1024 (1933).

■ Moreover, the prosecutor's misstep could not have prejudiced Olson. Where error is predicated upon allegations of prosecutorial misconduct, any error will be deemed harmless if the appellate court is confident, beyond a reasonable doubt, that the error could not have contributed to the conviction. *State v. Estes,* 111 Idaho 423, 428, 725 P.2d 128, 133 (1986); *State v. Harrison,* 136 Idaho 504, 506, 37 P.3d 1, 3 (Ct.App. 2001); *State v. Reynolds,* 120 Idaho 445, 451, 816 P.2d 1002, 1008 (Ct.App.1991). In Ol-

son's case, although the written tort claim itself had not been admitted as an exhibit, the prosecutor had extensively cross-examined Olson regarding the tort claim and even handed Olson a copy while he was testifying. Thus, although the prosecutor should not have told the jury to "take a look at the tort claim," her argument addressing Olson's testimony about the tort claim was not improper. The prosecutor's mistake was a miniscule one and can only be viewed as harmless.

■ Olson also argues that the magistrate court erred in denying his motion for a new trial which was predicated upon the alleged prosecutorial misconduct. This assertion is not well taken. First, the only grounds upon which a new trial may be granted in a criminal case are those set forth in I.C. § 19–2406, which do not include prosecutorial misconduct. *State v. Page,* 135 Idaho 214, 223, 16 P.3d 890, 899 (2000); *State v. Jones,* 127 Idaho 478, 481, 903 P.2d 67, 70 (1995); *State v. Carlson,* 134 Idaho 389, 398, 3 P.3d 67, 76 (Ct.App.2000). Second, as we have said above, there was no prosecutorial misconduct here that could reasonably be viewed as prejudicial so as to necessitate a new trial.

## III.

## CONCLUSION

The domestic violence statute, I.C. § 18–918 is not unconstitutionally vague, and it clearly proscribes the conduct for which Olson was prosecuted. Olson has shown no reversible error associated with prosecutorial misconduct. Accordingly, the judgment of conviction is affirmed.

Judge PERRY and Judge GUTIERREZ CONCUR.