84 P.3d 563

STATE of Idaho, Plaintiff–Respondent,

v.

Jack Leroy FOLSOM, Defendant–Appellant.

No. 27844.

Court of Appeals of Idaho.

Oct. 27, 2003.

Review Denied Feb. 12, 2004.

Molly J. Huskey, State Appellate Public Defender; Julie Dawn Reading, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

Jack Leroy Folsom appeals from his judgment of conviction rendered after he was found guilty of abandoning a vulnerable adult, a felony under Idaho Code § 18-1505A. Folsom argues that his conduct did not rise to the level of "abandonment" required by the statute. We affirm.

## I.

## FACTUAL AND PROCEDURAL SUMMARY

Jack Folsom, aged fifty, lived in Twin Falls with his mother, Lillian Thompson, aged seventy-two. Thompson suffered from poor health and schizophrenia and Folsom, who was unemployed, lived with her ostensibly to provide living assistance.

Thompson suffered a stroke at home, but Folsom did not call the paramedics for several days. When Folsom did finally call for medical assistance, an unresponsive Thompson was transported to the emergency room at Magic Valley Regional Medical Center (MVRMC). Doctors at MVRMC found Thompson to be in appalling condition. An extremely objectionable odor permeated the area immediately surrounding Thompson, and her clothing, saturated with urine and feces and host to maggots, was stuck to her body and difficult to remove. Beneath the filthy clothing, doctors found Thompson to be emaciated and riddled with bedsores and decaying skin. What muscles remained in Thompson's arms and legs resisted straightening, indicating to these medical professionals that Thompson had not moved in many days. Continuing their examination, doctors found substantial evidence that Thompson was severely dehydrated and had not consumed water for days. In addition to evidence of long-term malnutrition, the doctors were able to surmise that Thompson had not eaten anything in days.

Based on those factors, as well as the distribution and severity of the pressure sores on her back and legs, doctors estimated Thompson had not changed position for as many as seven days. Believing Thompson's condition warranted investigation, MVRMC personnel contacted Twin Falls police, who then accompanied Folsom to the residence he shared with his mother.

The investigating officers found the residence to be in grave disrepair, with no running water (hence no toilet; a bucket in the kitchen had been pressed into service as a commode), piles of rotten food and dirty clothes mixed together, unwashed pots and pans, fecal matter, broken appliances, dead rodents, bedding soiled nearly black, and an overwhelming odor of excrement and decay. Thompson's sleeping area, where she had lain unmoving for days, was located in the main room of the house and was surrounded by filth. Folsom, who made use of a private bedroom, claimed Thompson had been getting up and eating and drinking and cleaning herself while he slept.

The condition of the residence, in tandem with Thompson's state of health, prompted Folsom's arrest; he was later charged with violation of I.C. § 18–1505A, abandoning a vulnerable adult.

Folsom entered a plea of not guilty and waived his right to a jury trial. After the state presented its case-in-chief at a bench trial, Folsom moved for a judgment of acquittal, arguing that I.C. § 18–1505A was inapplicable to the facts before the court. Folsom specifically argued that his conduct did not constitute a felony "abandonment" of his mother, and that charges would have been more appropriate under the misdemeanor negligence statute, I.C. § 18–1505. This motion was denied. The district court then found Folsom guilty of violating I.C. § 18–1505A, abandoning a vulnerable adult, and committed him to the custody of the Idaho State Board of Correction for a unified sentence of five years, with one year determinate, and levied against him a fine of $1,000. Folsom appeals.

## II.

### ANALYSIS

Folsom argues that his right to due process forbids conviction under I.C. § 18–

1505A because the statute is ambiguous. Folsom contends that he lacked notice that he might be held criminally responsible for this conduct, and so requests a reversal of his conviction. Alternatively, Folsom asserts that his treatment of Thompson was merely negligent, and therefore, he is at most guilty of a misdemeanor.

We begin with Folsom's argument that I.C. § 18–1505A is ambiguous. The statute reads in relevant part:

> **18–1505A. Abandoning a vulnerable adult.**—Any person who abandons a vulnerable adult, as that term is defined in section 18–1505, Idaho Code[1], in deliberate disregard of the vulnerable adult's safety or welfare, regardless of whether the vulnerable adult suffered physical harm from the act of abandonment, shall be guilty of a felony and shall be imprisoned in the state prison for a period not in excess of five (5) years, or by a fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment. It shall not be a defense to prosecution under the provisions of this section that the perpetrator lacked the financial ability or means to provide food, clothing, shelter or medical care reasonably necessary to sustain the life and health of a vulnerable adult.
>
> As used in this section "abandon" means the desertion or willful forsaking of a vulnerable adult by any individual, caretaker as defined by subsection (2)(b) of section 18–1505, Idaho Code[2], or entity which has assumed responsibility for the care of the vulnerable adult by contract, receipt of payment of care, any relationship arising from blood or marriage wherein the vulnerable adult has become the dependent of another or by order of a court of competent jurisdiction....

---

1. Under I.C. 18–1505(2)(e), a vulnerable adult is "a person eighteen (18) years of age or older who is unable to protect himself from abuse, neglect or exploitation due to physical or mental impairment which affects the person's judgment or behavior to the extent that he lacks sufficient understanding or capacity to make or communicate or implement decisions regarding his person."

2. Under I.C. 18–1505(2)(b), a caretaker is "any individual or institution that is responsible by relationship, contract or court order to provide food, shelter or clothing, medical or other life-sustaining necessities to a vulnerable adult."

When presented with an issue of statutory interpretation, we exercise free review. *State v. Beard,* 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001). Interpretation of a statute by the Idaho judiciary can involve textual and contextual analysis, both of which are guided by a series of long-held maxims. We begin with examination of the literal words of the statute. *State, Dep't of Health & Welfare ex rel. Lisby v. Lisby,* 126 Idaho 776, 779, 890 P.2d 727, 730 (1995); *State v. Olson,* 138 Idaho 438, 440, 64 P.3d 967, 969 (Ct.App.2003); *Beard* at 646, 22 P.3d at 121. If we conclude that this language is clear and unambiguous, we will simply apply the statute as written. *State v. Hagerman Water Right Owners, Inc.,* 130 Idaho 727, 732, 947 P.2d 400, 405 (1997); *Olson* at 440, 64 P.3d at 969; *see also State v. Evans,* 134 Idaho 560, 563, 6 P.3d 416, 419 (Ct.App.2000).

Idaho Code § 18–1505A subjects to felony prosecution any person who (1) abandons (2) a vulnerable adult (3) in deliberate disregard of the vulnerable adult's safety or welfare. At trial Folsom argued that "to abandon" meant only "to effect a physical departure" from someone. The district court disagreed, and on appeal Folsom now concedes that the plain meaning of "to abandon" includes a withdrawal from obligation. Folsom has not contested the description of his mother as a "vulnerable adult," and the record reveals substantial evidence that Thompson was, in fact, a vulnerable adult for the purposes of I.C. § 18–1505A.

Folsom, at oral argument, argued that I.C. § 18–1505A required the state to prove that he did not intend to resume care. Folsom asserts that he did intend to resume care, a proposition he supports by pointing to the fact that he did eventually call for emergency medical service. Folsom would have us interpret the word "abandon" as necessarily implying an intent to never resume care. We reject this argument, finding nothing in the plain language of I.C. § 18–1505A that implies imposition of intent to never return as an element of the crime. Under I.C. § 18–1505A, the appropriate inquiry is not whether Folsom intended to resume care, but whether his failure to provide care amounted to the "desertion or willful forsaking" of Thompson.

Folsom alternatively argues that his conduct amounted to no more than a violation of I.C. § 18–1505, which makes it a misdemeanor to "neglect" a vulnerable adult. Idaho Code § 18–1505 defines "neglect" as the "failure of a caretaker to provide food, clothing, shelter or medical care to a vulnerable adult, in such a manner as to jeopardize the life, health, and safety of the vulnerable adult." Folsom argues that while he may have been extremely neglectful, the legislature intended even outrageous neglect to be a misdemeanor. Thus, Folsom contends that his conduct did not rise to the level contemplated necessary for a felony conviction.

We assume that the legislature knew of other statutes in existence at the time a given statute was passed, particularly statutes of a similar concern. *State v. Betterton,* 127 Idaho 562, 563, 903 P.2d 151, 152 (Ct.App.1995). In deference to legislative expertise, we therefore decline to presume a redundancy between entire statutes. Rather, statutes in *pari materia* (relating to the same subject) are construed as complementary and cohesive. *State v. Jeppesen,* 138 Idaho 71, 75, 57 P.3d 782, 786 (2002). As such, we will not read the abandonment statute as but another expression of the exploitation, abuse, and neglect statute, but as a consistent (if overlapping) expression of a legislative desire to shield vulnerable adults from all manner of mistreatment. When in the event of such overlap an action could be charged under either statute, prosecutorial discretion will control the charging decision. *State v. Barnes,* 133 Idaho 378, 382, 987 P.2d 290, 294 (1999).

While both I.C. §§ 18–1505 and 18–1505A criminalize the failure to provide care to a vulnerable adult, there is a significant difference between mere neglect and felonious abandonment. Pursuant to the clear language of I.C. § 18–1505A, we conclude that the crime of abandonment is committed when a caretaker affects a complete withdrawal of care. The length of time that care is withheld is a factor for the jury to consider in deciding whether an accused has abandoned, or merely neglected, the vulnerable adult.

In addition, abandonment is distinguished from mere neglect in that abandonment requires "deliberate disregard" for the safety or welfare of the vulnerable adult.

Here, medical experts testified that Thompson had not consumed any food or water for days and that her body showed signs of having been left to lie in its own waste for days. They also indicated the presence of maggots on sores. Investigators found the home shared by Folsom and Thompson to be without running water, the floor literally covered with piles of filth and refuse, and the air made heavy by the noxious odor of excrement and rot. Even after Thompson suffered a stroke and lay unmoving and unresponsive in filth, Folsom chose to not contact medical personnel. In short, there is no evidence that Folsom provided even a rudimentary level of care for Thompson, but instead completely abandoned her. Folsom did eventually call for medical help. The law, however, does not absolve an offender who, after committing a crime, realizes a change of heart. By enacting I.C. § 18–1505A, the legislature has distinguished between conduct that is neglectful and constitutive of a misdemeanor offense, and conduct that rises to felonious abandonment. The evidence suffices to prove that Folsom abandoned a vulnerable adult with deliberate disregard for her safety and welfare.[3]

### III.

### CONCLUSION

We conclude that the district court correctly interpreted and applied I.C. § 18–1505A to the facts at issue. Accordingly, Folsom's judgment of conviction is affirmed.

Chief Judge LANSING and Judge PERRY concur.

---

3. Because I.C. § 18–1505A is unambiguous and was here applied appropriately, there is no reason to address Folsom's request that we apply the rule of lenity or his fair warning argument.