80 P.3d 338

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Larry Alan TAYLOR, Defendant–Appellant.**

**No. 28966.**

Court of Appeals of Idaho.

Nov. 7, 2003.

without the driver having knowledge that his or her license is suspended, revoked, or otherwise invalid.

Molly J. Huskey, State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant. Paul S. Sonenberg argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cude´, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude´ argued.

LANSING, Chief Judge.

Larry Alan Taylor was charged with driving without a valid license and other offenses. A jury found him guilty of all the charges. Taylor now appeals only the conviction for driving without a valid license, contending that the jury was erroneously instructed on that offense.

## I.

## BACKGROUND

On August 3, 2001, the Idaho Transportation Department sent a letter to Taylor notifying him that his driving privileges would be suspended for thirty days, effective August 20, 2001, for excessive violation points.[1] The notice, which was sent by certified mail, was returned to the Transportation Department unclaimed. During the suspension period, and while Taylor was driving his vehicle, he was stopped by police for unrelated reasons. Taylor was charged with, among other things, driving without a valid license, Idaho Code § 49–301.

During his trial, Taylor sought to raise the defense that he had been unaware of the license suspension because he did not receive the notice. The district court concluded, however, that knowledge that one's license is invalid is not an element to the crime of driving without a valid driver's license, and therefore instructed the jury without including such knowledge as an element. Taylor contends that this determination was error. The State responds that § 49–301 defines a strict liability crime that may be committed

1. *See* Idaho Code § 49–326.

## II.

## ANALYSIS

When a court engages in statutory interpretation, its purpose is to effectuate the intent of the legislature. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Cudd,* 137 Idaho 625, 627, 51 P.3d 439, 441 (Ct.App.2002). We begin with an examination of the statute's literal words. *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Olson,* 138 Idaho 438, 440, 64 P.3d 967, 969 (Ct.App. 2003). The language of a statute is to be given its plain, obvious, and rational meaning. *State v. Broadway,* 138 Idaho 151, 152, 59 P.3d 322, 323 (Ct.App.2002); *State v. Scott,* 135 Idaho 457, 458, 19 P.3d 771, 772 (Ct.App. 2001). If the language is clear and unambiguous, we must give effect to the statute as written, without engaging in statutory construction. *Broadway,* 138 Idaho at 152, 59 P.3d at 323; *State v. Beard,* 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001).

The statute in question, I.C. § 49–301(1), provides: "No person ... shall drive any motor vehicle upon a highway unless the person has a valid Idaho driver's license." The words of this statute are plain and unambiguous. On its face, it does not incorporate any element of knowledge that the driver is without a valid license. It appears that by omitting any mens rea element, the legislature intended to subject all persons driving without a valid license to punishment, regardless of whether they knew that their license had been suspended or revoked. In this respect, I.C. § 49–301(1) may be contrasted with another statute, I.C. § 18–8001, which prohibits a person from driving on the highways of this state "with *knowledge* ... that his driver's license, driving privileges or permit to drive is revoked, disqualified or suspended." (Emphasis added.) Section 18–8001 demonstrates that the legislature affirmatively incorporates a knowledge element when it intends to do so. In addition, the

prescription of relatively harsher penalties for violation of section 18–8001 than for section 49–301[2] suggests that the legislature may have assigned less culpability to a violation of section 49–301 because a violation may occur inadvertently, without knowledge of the wrong.

The notion of strict liability in criminal law may seem, at first blush, surprising or ill-conceived and, indeed, at common law intent was nearly always a necessary element of a crime. WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 5.1 (2d ed.2003). However, in modern times strict liability is not unusual in legislatively defined criminal offenses. In *Morissette v. United States*, 342 U.S. 246, 251, 72 S.Ct. 240, 243–44, 96 L.Ed. 288, 294 (1952), the United States Supreme Court construed a federal statute to determine whether criminal intent was required for the commission of the offense. The Court observed that despite a common law tradition viewing crime as "constituted only from concurrence of an evil-meaning mind with an evil-doing hand," industrialization and complexities of the modern world have led to legislation requiring strict conformity with some standards, without regard to knowledge or intent. With the industrial revolution, the Court noted, there came an increased need to protect workers from injury, increased traffic volumes and velocities subjecting travelers to intolerable casualty risks if drivers were not required to observe new standards and uniformities of conduct, urban congestion that called for unprecedented health and welfare regulations, and the wide distribution of food, drink, drugs and other goods that became an instrument of harm if reasonable standards of quality and care were not imposed. *Id.* at 254, 72 S.Ct. at 245, 96 L.Ed. at 295–96. These conditions, the Court observed, led to a category of criminal laws creating what may be called "public welfare offenses" which, unlike common law crimes, do not involve injury to the state, persons, property, or public morals, but are "in the nature of neglect where the law requires care, or inaction where it imposes a duty." *Id.* at 255, 72 S.Ct. at 246, 96 L.Ed. at 296. The Court continued:

Many violations of such regulations result in no direct or immediate injury to person or property but merely create the danger or probability of it which the law seeks to minimize. While such offenses do not threaten the security of the state in the manner of treason, they may be regarded as offenses against its authority, for their occurrence impairs the efficiency of controls deemed essential to the social order as presently constituted. In this respect, whatever the intent of the violator, the injury is the same, and the consequences are injurious or not according to fortuity. Hence, legislation applicable to such offenses, as a matter of policy, does not specify intent as a necessary element. The accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities. Also, penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation. Under such considerations, courts have turned to construing statutes and regulations which make no mention of intent as dispensing with it and holding that the guilty act alone makes out the crime.

*Id.* at 255–56, 72 S.Ct. at 246, 96 L.Ed. at 296–97. Such offenses, where the legislation dispenses with the conventional requirement of an awareness of some wrongdoing, "puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger." *Id.* at 260, 72 S.Ct. at 248, 96 L.Ed. at 298–99 (quoting *United States v. Dotterweich*, 320 U.S. 277, 281, 64 S.Ct. 134, 136–37, 88 L.Ed. 48, 51–52 (1943)).

This Court considered the category of public welfare offenses in *Haxforth v. State*, 117

---

2. Idaho Code § 49–301 defines a misdemeanor that is punishable, under I.C. § 18–113, by incarceration for a period not to exceed six months and/or by a fine not to exceed three hundred dollars. Idaho Code § 18–8001 defines the offense of driving without privileges, which is also a misdemeanor but carries harsher penalties. A person convicted of driving without privileges for the first time is subject to a mandatory minimum period of incarceration of not less than two days but not exceeding six months, a fine of up to five hundred dollars, and suspension of driving privileges for an additional six months.

Idaho 189, 786 P.2d 580 (Ct.App.1990), where we addressed whether a statute may criminalize acts of ordinary negligence, as opposed to criminal negligence. We stated: "Courts have concluded that under certain circumstances, public welfare offenses, such as traffic violations, need not contain a general criminal intent or criminal negligence requirement in order to comply with the due process clause. Instead, the crimes can be premised upon ordinary negligence, or in some instances, even strict liability." *Id.* at 190–91, 786 P.2d at 581–82. Relying upon *Holdridge v. United States*, 282 F.2d 302 (8th Cir.1960), we set forth a four-pronged analysis to guide the determination whether a crime is a public welfare offense. Under that analysis, a crime may be considered a public welfare crime if it (1) does not find its roots in the common law, (2) carries with it only a light penalty, (3) does not gravely besmirch the offender's character, and (4) embodies a rule of conduct with which compliance can be reasonably expected. *Haxforth*, 117 Idaho at 191, 786 P.2d at 582.

Applying these four criteria, I.C. § 49–301 falls neatly into the category of a public welfare offense. The offense is not based upon common law, carries only a light penalty,[3] does not seriously damage a person's reputation, and requires conduct—the procurement and retention of a valid driver's license—that the State may reasonably expect of all persons seeking to drive upon the highways of this state. Section 49–301 promotes public safety and welfare by prohibiting the operation of vehicles on public highways by anyone who has not demonstrated driving competence by satisfying standards for acquisition and retention of a driver's license. The focus of the statute is not on punishing personal culpability but upon promoting public safety.

It may be contended that a construction of I.C. § 49–301 that omits any mens rea element would be contrary to I.C. § 18–114, which states, "In every crime or public offense there must exist a union, or joint operation, of act and intent, or criminal negligence." It is elementary, however, that I.C. § 18–114, which was initially adopted in Idaho's territorial days, cannot circumscribe the authority of subsequent legislatures to enact statutes that define crimes without an intent or negligence element. The Idaho Supreme Court so held as early as 1922 in *State v. Sterrett*, 35 Idaho 580, 207 P. 1071 (1922). While acknowledging the provisions of section 18–114 (then codified as C.S. § 8087), the Court held:

Whether a criminal intent is a necessary element of a statutory offense is a matter of construction, to be determined from the language of the statute in view of its manifest purpose and design, and where such intent is not made an ingredient of the offense, the intention with which the act is done, or the lack of any criminal intent in the premises, is immaterial.

*Id.* at 583, 207 P. at 1072. *See also Haxforth*, 117 Idaho at 190, 786 P.2d at 581.

Accordingly, we conclude that I.C. § 49–301 does not require that the offender have knowledge that he or she lacks a valid driver's license in order for a violation to occur. The district court did not err in omitting knowledge from the elements of the offense to be determined by the jury.

Taylor's judgment of conviction is affirmed.

Judge PERRY and Judge GUTIERREZ concur.

---

**3.** Other courts, in determining whether a statute requires an element of intent, have found that incarceration equal to or greater than that prescribed in section 49–301 constitutes a "light penalty." *See, e.g., United States v. Unser*, 165 F.3d 755 (10th Cir.1999) (unlawful possession and operation of a motor vehicle within a National Forest Wilderness Area; fine up to $5,000 or imprisonment for up to six months); *United States v. Engler*, 806 F.2d 425 (3rd Cir.1986) (selling migratory birds or bird parts in violation of the Migratory Bird Treaty Act; fine up to $2,000 and/or imprisonment up to one year); *United States v. Erne*, 576 F.2d 212 (9th Cir.1978) (violation of 26 U.S.C. § 7215, a provision of the Internal Revenue Code; fine up to $5,000 and/or imprisonment up to one year); *United States v. Ayo–Gonzalez*, 536 F.2d 652 (5th Cir.1976) (illegally fishing in the contiguous fishing zone of the United States; fine up to $100,000 and/or imprisonment up to one year).