121 P.3d 416

**STATE of Idaho, Plaintiff–Respondent,**

v.

**William Earl DOUGHERTY, Jr.,
Defendant–Appellant.**

No. 30350.

Court of Appeals of Idaho.

Aug. 25, 2005.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge.

William Earl Dougherty, Jr. appeals from his judgment of conviction, entered after a jury found him guilty of sexual abuse of a minor under the age of sixteen. We affirm.

## I.

### FACTS AND PROCEDURE

The victim in this case and Dougherty's daughter were friends. One night, when the victim was thirteen years old, she spent the night at Dougherty's residence. The victim and Dougherty's daughter slept on a couch and Dougherty slept on the floor next to the couch. During the night, Dougherty touched the victim's breast and genitalia. The victim disclosed Dougherty's conduct to her mother the following day and authorities were informed. Dougherty was arrested and charged with sexual abuse of a minor under the age of sixteen, I.C. § 18–1506(1)(b).

At trial, Dougherty testified in his defense as follows:

[Defense Counsel]: [Have] the police ever interviewed you?

[Dougherty]: No, sir. The police never interviewed me, my daughter, nobody that was there in my family. They came out— five federal marshals came out and got me at work, sir.

[Defense Counsel]: How do you know they haven't interviewed your family?

[Dougherty]: Because of what [the detective] said. See, I bailed out of jail that evening, and they said that [the] reason [the detective] never interviewed anybody in my family or anything was because we probably already had our stories collaborated is her exact words.

[Defense Counsel]: But nobody interviewed you?

[Dougherty]: No, sir.

[Defense Counsel]: Nobody took any statements from you?

[Dougherty]: No, sir. They came and got me at work, like I said, five federal marshals.

Following Dougherty's direct examination, the following exchange occurred outside of the presence of the jury:

[Prosecutor]: ... Mr. Dougherty has testified basically that nobody investigated this or tried to get his version of events and that sort of thing, and [the detective], when she went and contacted him and ultimately arrested him [she] did attempt to get a statement from [Mr. Dougherty] and get [his] version and he denied or refused to give one. And I—while normally that would be commenting on a person's right to remain silent, wouldn't be admissible, I believe that Mr. Dougherty asserting that nobody even tried, that that would be certainly an area that he's opened the door for me to inquire into, your Honor, and put on evidence regarding the situation.

[Dougherty]: She never asked me nothing.

The Court: Just a second. [The] point isn't whether she did or not. The question is going to be what the evidence is going to be—hang on.

[Defense Counsel]: Yes, I think he's entitled to impeach him on—

The Court: I do, too. I will grant your right to call the detective.

Then, cross-examination of Dougherty revealed the following:

[Prosecutor]: And you testified that no effort was made to investigate this case and talk to you?

[Dougherty]: No, sir, there wasn't.

[Prosecutor]: Do you recall [the detective] contacting you and asking you your version of events?

[Dougherty]: The only time [the detective] contacted me, sir, is when she came out to my workplace with five federal marshals, sir.

[Prosecutor]: Is that when you were arrested?

[Dougherty]: Yes, sir.

[Prosecutor]: Did she ask you what your version was at that time?

[Dougherty]: No, sir. She read me my rights, sir, and put me in a vehicle with another officer, sir.

After Dougherty's cross-examination, the state called the detective and the following exchange occurred:

[Prosecutor]: After talking with [the victim and her family] did you make any effort to get Mr. Dougherty's version of events?

[Detective]: I—upon receiving an arrest warrant for Mr. Dougherty myself and [my lieutenant], my supervisor ... located Mr. Dougherty at his workplace..

[Prosecutor]: Okay, and—

[Detective]: And I found him there. He was working and told him that I had an arrest warrant for him and read him the arrest warrant and read him his rights and asked him if he would like to talk to me about this and he did not want to.

[Prosecutor]: So he didn't—you gave him an opportunity to provide his version?

[Detective]: Yes.

[Prosecutor]: And tried to get it from him?

[Detective]: Yes

[Prosecutor]: And he didn't give it to you?

[Detective]: That's correct.

Dougherty did not object during the detective's testimony and no more testimony about the circumstances surrounding Dougherty's arrest was offered.

During the defense's closing argument, Dougherty attempted to undermine the victim's credibility by arguing that if her accusations were true, she would not have waited until the following day to report the alleged abuse. In rebuttal, the prosecutor argued, "oftentimes sex offenses aren't reported for weeks, months or even years," and Dougherty objected. The district court sustained Dougherty's objection and instructed, "the jury will disregard that. And I'm instructing, ladies and gentlemen of the jury, there's no evidence as to how long it takes to report, and so you're to disregard that." The jury returned a verdict of guilty.

Dougherty appeals, arguing that his right to due process was violated when the state elicited testimony from the detective regard-

ing Dougherty's post-*Miranda*[1] silence and that the prosecutor's comment during closing prejudiced Dougherty's right to a fair trial.

## II.

## ANALYSIS

### A. Post-*Miranda* Silence

The state contends that, because Dougherty's counsel acknowledged that the state was entitled to impeach Dougherty and he failed to object during the detective's testimony, Dougherty has waived whether the detective's testimony violated his right to due process on appeal. This Court will not address an issue not preserved for appeal by an objection in the trial court. *State v. Rozajewski*, 130 Idaho 644, 645, 945 P.2d 1390, 1391 (Ct.App.1997). However, we may consider fundamental error in a criminal case, even though no objection was made at trial. *Id.* Fundamental error has been defined as error which goes to the foundation or basis of a defendant's rights, goes to the foundation of the case or takes from the defendant a right which was essential to his or her defense and which no court could or ought to permit to be waived. *State v. Babb*, 125 Idaho 934, 940, 877 P.2d 905, 911 (1994). Reference to a defendant's exercise of the right to remain silent during custodial interrogation by a state agent is fundamental error and is reviewable by this Court even in the absence of an objection. *State v. Martinez*, 128 Idaho 104, 111, 910 P.2d 776, 783 (Ct.App.1995). Accordingly, notwithstanding Dougherty's failure to object to the detective's testimony, we will review whether the state violated Dougherty's right to due process.

Before police may interrogate a person who has been taken into custody, they must inform the person that he or she has the right to remain silent and that anything said can and will be used against him or her in court. *Miranda*, 384 U.S. at 467–69, 86 S.Ct. at 1624-25, 16 L.Ed.2d at 719-21. Law enforcement must also advise the person taken into custody that he or she has the right to consult with a lawyer and to have the

lawyer present during any interrogation. *Id.* at 471, 86 S.Ct. at 1626, 16 L.Ed.2d at 721-22. Thus, when a defendant remains silent after receiving those warnings, that silence may indicate nothing more than the arrestee's exercise of the *Miranda* rights. *Doyle v. Ohio*, 426 U.S. 610, 617, 96 S.Ct. 2240, 2244, 49 L.Ed.2d 91, 97 (1976). Furthermore, when a person receives the *Miranda* warnings, that person is implicitly guaranteed that his or her silence will not carry a penalty. *Doyle*, 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98; *United States v. Gant*, 17 F.3d 935, 941 (7th Cir.1994). Under those circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach his or her exculpatory story subsequently offered at trial. *Doyle*, 426 U.S. at 618, 96 S.Ct. at 2245, 49 L.Ed.2d at 98; *Gant*, 17 F.3d at 941. Thus, the general rule is that the defendant's post-*Miranda* silence may not be used to impeach the defendant at trial. *See United States v. Rodriguez*, 260 F.3d 416, 420 (5th Cir.2001); *State v. Strouse*, 133 Idaho 709, 713, 992 P.2d 158, 162 (1999).

Nevertheless, the defendant can open the door to questioning regarding his or her post-*Miranda* silence. *See Gant*, 17 F.3d at 941. Where the prosecution has not attempted to equate the defendant's silence with guilt, the evil condemned in *Doyle* has not been implicated. *See Bieghler v. McBride*, 389 F.3d 701, 705 (7th Cir.2004). Thus, when the defendant testifies or is questioned about post-arrest behavior, the prosecution may use the defendants silence for the limited purpose of impeaching that testimony. *Gant*, 17 F.3d at 941. As the United States Supreme Court indicated:

It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defen-

---

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

dant's testimony as to his behavior following arrest.

*Doyle*, 426 U.S. at 619, n. 11, 96 S.Ct. at 2245, n. 11, 49 L.Ed.2d at 98, n. 11. Under this exception, the defendants silence is admissible only for the limited purpose of rebutting the impression created by the defendant. *Rodriguez*, 260 F.3d at 421. The prosecution may not argue that the defendant's silence is inconsistent with his or her claims of innocence. *Rodriguez*, 260 F.3d at 421; *Gant*, 17 F.3d at 941.

In the instant case, Dougherty testified during direct examination that no one interviewed him regarding the alleged crime. Once the district court granted the state's request to call the detective, Dougherty was on notice that the state intended to rebut his contention that no one tried to take his statement. Despite this knowledge, Dougherty testified during the state's cross-examination that, at the time of his arrest, the detective did not ask for Dougherty's version of events. Accordingly, the state was entitled to introduce testimony for the limited purpose of rebutting Dougherty's contention that at the time he was arrested, no one offered to interview him or take his statement.

■ There remains a question whether the detective's testimony went beyond permissible rebuttal. In *Strouse*, the state argued that the defendant opened the door to the state's extensive questioning of the defendant about his post-*Miranda* silence. Our Supreme Court concluded, however, that the facts of that case did not call the exception noted by the Court in *Doyle* into play. *Strouse*, 133 Idaho at 714, 992 P.2d at 163. The Court reasoned that a defendant should not be allowed to mischaracterize the facts on direct examination, knowing that the state is powerless to impeach. Nonetheless, the Court concluded that, although to a limited degree the defendant may have created a false impression on direct examination, the state's examination regarding the defendant's silence far exceeded the scope of anything testified to by the defendant. *Id.*

In *Gant*, the prosecutor commented on the defendant's post-*Miranda* silence during trial and during closing argument. The defendant argued that, therefore, the prosecution violated his right to due process. The court concluded that the defendant opened the door to questions, which challenged his credibility, by implying on direct examination that he had cooperated with police and that the police were at fault for an extended delay in the investigation. *Gant*, 17 F.3d at 942. However, the court noted that there is a fine line, which distinguishes commentary designed to impeach the defendant's testimony from commentary designed to invite an inference of guilt. *See id.* at 943. The slight suggestion of guilt, which is inextricably intertwined with the use of post-*Miranda* silence to impeach credibility, is grudgingly permitted only because the prosecution needs to impeach the defendant's proffered reason for remaining silent. *Id.* at 942. The court concluded that, when read in the entire context of cross-examination, the prosecution's inquiry into the defendant's post-arrest silence was fairly characterized as permissible impeachment. *Id.* at 943. However, during the prosecution's closing argument, it argued that the defendant's silence was consistent with the behavior of a confederate in crime. The court held that the prosecutor's argument was difficult to characterize as a commentary on credibility and, instead, was an invitation to draw an inference of guilt. *See id.*

Here, the detective's testimony was confined to statements demonstrating that when she went to arrest Dougherty, she read him his rights and asked him if he would like to talk about the charges, which Dougherty declined. Thus, unlike the situation in *Strouse*, the detective's testimony regarding Dougherty's post-*Miranda* silence did not exceed the scope of what Dougherty testified to. Further, neither the detective's testimony nor the state's argument invited the jury to draw an inference of guilt from Dougherty's post-*Miranda* silence. We conclude that the detective's testimony can be fairly characterized as impeachment, which was utilized for the limited purpose of rebutting the impression created by Dougherty's testimony. The slight suggestion of guilt, which was inevitably tied to the detective's testimony regarding Dougherty's post-*Miranda* silence, was permissible as a result of the state's need to counter Dougherty's contention that he re-

mained silent because no one asked him his version of events. Accordingly, Dougherty's right to due process was not violated.

## B. Prosecutor's Closing Statement

 Dougherty contends that when the prosecutor argued that sexual abuse is often not reported for months, he was denied the right to a fair trial. Dougherty does not, however, identify an adverse ruling at trial that forms the basis for the assignment of error. When Dougherty objected to the prosecutor's argument, the district court sustained the objection and admonished the jury to disregard the comment. The record does not disclose that Dougherty lodged any further objection or asked the trial court for any other relief. This Court will not review a trial court's alleged error on appeal unless the record discloses an adverse ruling which forms the basis for the assignment of error. *State v. Barnett,* 133 Idaho 231, 235, 985 P.2d 111, 115 (1999). There is no ruling, which was unfavorable to Dougherty, for this Court to review or reverse. *See also State v. Olson,* 138 Idaho 438, 442, 64 P.3d 967, 971 (Ct.App.2003).

 Moreover, where error is predicated upon allegations of prosecutorial misconduct, any error will be deemed harmless if the appellate court is confident, beyond a reasonable doubt that the error could not have contributed to the conviction. *Olson,* 138 Idaho at 442, 64 P.3d at 971; *State v. Harrison,* 136 Idaho 504, 506, 37 P.3d 1, 3 (Ct.App. 2001). The district court instructed that no evidence had been admitted regarding the length of time, which it generally takes before sexual abuse is reported, and that the jury was to disregard the prosecutor's comment. We presume that the jury obeyed the district court's direction to disregard the prosecutor's comment. *See State v. Miller,* 130 Idaho 550, 553, 944 P.2d 147, 150 (Ct. App.1997).

The record also demonstrates that the prosecutor's comment was not calculated to inflame the minds of jurors and arouse prejudice or passion against Dougherty. Rather, the record indicates that the prosecutor's comment was utilized in an attempt to counter Dougherty's argument that if the victim had truly been abused, she would not have waited until the following day to report the incident. Although there was no evidence introduced at Dougherty's trial demonstrating that delays in reporting sexual abuse are common, we note that in substance, the prosecutor's statement is similar to what experts have appropriately testified to in other trials concerning sexual misconduct. *See e.g. State v. Ransom,* 124 Idaho 703, 709–10, 864 P.2d 149, 155–56 (1993); *State v. Blackstead,* 126 Idaho 14, 20–22, 878 P.2d 188, 194–96 (Ct. App.1994). In *Ransom,* the Court held that expert testimony, which included an explanation why children may not immediately report abuse, was found not to impose on the jury's fact-finding function or to be unfairly prejudicial. *Ransom,* 124 Idaho at 710, 864 P.2d at 156.

Even if there had been an adverse ruling pertaining to alleged prosecutorial misconduct, the prosecutor's comment cannot be characterized as inflammatory. We are confident, beyond a reasonable doubt, that the prosecutor's comment could not have contributed to the jury's finding that Dougherty was guilty.

## III.

## CONCLUSION

By testifying on direct and cross-examination regarding the circumstances surrounding his arrest, Dougherty opened the door for the state to rebut the impression created by that testimony. We conclude that, because the comments elicited by the state did not exceed the scope of Dougherty's testimony, his right to due process was not violated when the detective testified about Dougherty's post-*Miranda* silence. Further, because Dougherty's objection to the prosecutor's comment regarding delays in the reporting of sexual abuse was sustained and a curative instruction given, there is no adverse ruling for us to consider on appeal. Dougherty's judgment of conviction and sentence for sexual abuse of a minor under the age of sixteen are affirmed.

Chief Judge PERRY and Judge LANSING concur.