# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47628

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: November 18, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| NATALIE J. MIRAMONTES, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

Judgment of conviction for possession of methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Justin R. Porter, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Natalie J. Miramontes appeals from the judgment of conviction entered on her conditional guilty plea to possession of methamphetamine, Idaho Code § 37-2732(c)(1). Miramontes challenges the district court's denial of her motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Miramontes does not challenge the district court's factual findings made in support of its denial of her suppression motion. Those findings are that Officers Myler and LaVallee arrived at Christine Evans' residence to conduct a probationary check on Evans. After entering the residence, Officer Myler saw another person, who was later identified as Miramontes, exiting through the residence's back door, hunching over, and carrying a bag. Officer Myler ordered Miramontes to stop three times. The third time, Miramontes complied and dropped what she was carrying. At

1

that point, Officer Myler ordered Miramontes to return to the residence and to identify herself and asked why she was at the residence. Miramontes explained she was staying with Evans in a spare bedroom.

Officer LaVallee collected the items Miramontes had dropped on the ground outside and placed those items on the washing machine in the residence. Among the items was a backpack and several smaller, zipped bags. When Officer Myler asked Miramontes for her identification, Miramontes responded it was in a pink floral print bag. Officer Myler asked Officer LaVallee to retrieve Miramontes' identification, and when Officer LaVallee opened a pink bag, he saw what appeared to be drugs and drug paraphernalia. After Officer Myler looked into the bag, she called the Pocatello Police Department.

Officers Myler and LaVallee detained both Miramontes and Evans until officers from the Pocatello Police Department, including Officer Leach, arrived at the residence. Officer Leach searched the bedroom in which Miramontes had been staying and found drug paraphernalia and drugs, which later tested positive for methamphetamine. Officer Leach also inspected the bags which Officer LaVallee had collected from outside and found Miramontes' identification and a syringe containing a dark substance in a different pink bag than the one Officer LaVallee had opened. Officer Leach spoke with both Evans and Miramontes, read Miramontes her *Miranda*[1] rights, identified the items which belonged to Miramontes, and arrested her. As a result, the State charged Miramontes with one felony count of possession of methamphetamine with intent to deliver, I.C. § 37-2732(a)(1)(A).

Miramontes pled not guilty to this charge and filed a motion to suppress, arguing Officer Myler unreasonably seized her outside of Evans' residence and seeking to suppress the "[e]vidence obtained through this seizure." The district court held an evidentiary hearing on the motion at which Officers Myler, LaVallee, and Leach all testified. Following this hearing, the parties submitted briefing, in which Miramontes argued generally that her "detention and the subsequent search of her purse violated the Fourth Amendment." In support, Miramontes relied on *State v. Williams*, 162 Idaho 56, 60-64, 394 P.3d 99, 103-07 (Ct. App. 2016), in which this Court addressed the constitutionality of a third party's detention during the execution of a search warrant and

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

established a balancing test for determining whether such a detention violated the Fourth Amendment.

After reviewing the parties' post-hearing briefing in this case, the district court held a second hearing to clarify the parties' positions. In particular, the court inquired whether the State charged Miramontes based on the evidence found in her purse or in the bedroom in which she was staying, and the prosecutor responded "both." Then, the court inquired of Miramontes' counsel whether Miramontes was seeking to suppress the evidence found in both her purse and in the bedroom, and it noted Miramontes had not addressed in her briefing what evidence was the "fruit of the poisonous tree" from the alleged unlawful seizure. Miramontes' counsel responded that "if there is [an] illegal seizure then things that . . . are obtained subsequent to the illegal seizure are supposed to be suppressed." Further, Miramontes' counsel stated "the difference is what they are allowed to do when they detain her," acknowledged the officers could "detain her to determine her identity perhaps--or probably," and framed the issue as "can they then get into her purse? Can they search her effects[?]"

At the conclusion of this second hearing, the district court inquired of Miramontes' counsel whether he wanted "to address more fully the question of can the drugs found in the bedroom be a basis for this charge, even if the drugs in the purse were suppressed?" to which he responded affirmatively. Further, the court articulated:

> The question is that even if I were to suppress the drugs they found in the purse . . .
> is the discovery of the drugs in the bedroom . . . sufficiently attenuated from the
> discovery of the drugs in the purse so as to be a proper basis for these charges,
> regardless of what was in the purse?

Following this second hearing, the parties filed supplemental briefing. In this briefing, Miramontes argued that neither the attenuation doctrine, the inevitable discovery doctrine, nor the independent source doctrine provided an exception to the exclusionary rule for the evidence discovered during the officers' search of Evans' residence.

After reviewing this supplemental briefing, the district court denied Miramontes' suppression motion. In denying the motion, the court relied on *Williams*, applied the balancing test set forth in that case, and concluded "the detention and subsequent seizure of [Miramontes] was not in violation of her Fourth Amendment rights." After reaching this conclusion, the court found "no reason" to analyze whether "the fruit of the poisonous tree doctrine" provided an exception to the exclusionary rule.

3

Following the denial of her suppression motion, Miramontes pled guilty to possession of methamphetamine and reserved her right to appeal the denial of the motion. After timely appealing that denial, Miramontes moved to suspend briefing in this appeal, pending the resolution of a petition for certiorari for the review of the Idaho Supreme Court's decision in *State v. Phipps*, 166 Idaho 1, 454 P.3d 1084 (2019). In *Phipps*, the Court held that "officers have the categorical authority to detain all occupants of a residence incident to a lawful parole or probation search and to question them as long as the detention is not prolonged by the questioning." *Id.* at 8, 454 P.3d at 1091. When the petition for certiorari was denied in October 2020, this appeal resumed.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Miramontes challenges the district court's denial of her suppression motion. Miramontes does not challenge, however, what she describes as "her warrantless, suspicionless detention while the residence check at [Evans' residence] was conducted." Rather, she acknowledges that the Idaho Supreme Court's ruling in *Phipps* that officers have "the categorical authority" to detain all occupants of a residence incident to a probationary search resolves in the State's favor the issue of whether her detention was lawful. *Phipps*, 166 Idaho at 8, 454 P.3d at 1091. To the extent Miramontes cites legal authorities addressing whether reasonable suspicion exists to seize or detain an individual, those authorities are inapposite because Miramontes concedes her detention was lawful in the context of the probationary search.

Rather than challenging her detention as unlawful, Miramontes now argues on appeal that "the district court erred by denying her motion where her purse was searched absent reasonable

4

and articulable suspicion of criminal wrongdoing." In support, Miramontes asserts various arguments including that "neither officer safety nor [Evans'] Fourth Amendment [probationary] waiver authorized the search of [her] purses or the room in which she slept"; leaving [Evans'] residence out the back door . . . did not give rise to reasonable articulable suspicion of criminal conduct"; "[f]light is not, standing alone, a basis for reasonable articulable suspicion"; and her "purse was opened by law enforcement absent a warrant, absent consent, and absent reasonable suspicion or probable cause."

In response, the State argues "Miramontes failed to present to the district court any cogent argument, backed by authority and citations to evidence in the record, regarding the allegedly unlawful search of her purse." While the State acknowledges Miramontes made "the bare assertion" that "the search of her purse violated the Fourth Amendment" in her initial brief, the State contends that Miramontes did not support this assertion "with any authority, argument, or citation to the evidence in the record." Further, it contends that, to the extent Miramontes raised the issue, it "flew past" the court as indicated by the court's statement during the second hearing that "the issue was not addressed in either one of [the parties'] briefs."

Issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). This requirement, known as issue preservation, limits appellate court review to the evidence, theories, and arguments that were presented below. *State v. Garcia-Rodriguez*, 162 Idaho 271, 275, 396 P.3d 700, 704 (2017). To be properly preserved for appeal, both the issue and the party's position on the issue must be raised before the trial court. *State v. Gonzalez*, 165 Idaho 95, 99, 439 P.3d 1267, 1271 (2019). Recently, the Idaho Supreme Court has ruled that to preserve an issue for appeal, a party must do more than allege facts and state a conclusion. *State v. Randall*, ___ Idaho ___, ___, ___ P.3d ___, ___ (Oct. 5, 2021). Rather, a party must provide "an application of the law to the facts to support the conclusion stated" to preserve an issue for appeal. *Id.*

In this case, Miramontes at least suggested she was making an alternative argument that, even if her detention were lawful, the subsequent search of her purse was not. For example, during the second hearing, her counsel stated:

> The difference is what they are allowed to do when they detain her.
> . . . .

5

> . . . So, they can detain her to determine her identity perhaps--or probably. The question, though, is can they then get into her purse? Can they search her effects[?]

Also, in her initial brief, Miramontes cited *State v. Valdez*, 68 P.3d 1052, 1056 (Utah Ct. App. 2003), in which the court addressed whether officers could seize a third party while executing an arrest warrant absent facts supporting a reasonable suspicion of criminal activity. In *Valdez*, officers executed an arrest warrant on Young in her residence and, while doing so, awoke Valdez, who was also present, to ensure he did not have a weapon. *Id.* at 1054. After ensuring Valdez was not armed, the officers asked for Valdez's identification, learned he had an outstanding warrant, arrested him, and discovered drugs during a search incident to arrest. *Id.* Affirming the trial court's suppression of this evidence, the court held that the officers had the authority to detain Valdez to ensure "he was not in a position to harm" either the officers or Young but that "the scope of this detention was limited to ensuring Valdez had no weapons in his hands and was in no position to violently interfere with the arrest" absent reasonable suspicion he was or had been involved in a criminal activity. *Id.* at 1059.

Relying on *Valdez*, Miramontes argued to the district court that it "should rule similarly to the [*Valdez*] court." In support, Miramontes noted Officer Myler testified that she detained Miramontes "to control the scene and also for officer safety concerns," "was not concerned about criminal activity on the premises," "was not concerned about any violence at the time," and "detained and placed handcuffs on [Miramontes] [to control] the situation because of 'policy.'" Further, Miramontes noted the officers "searched [her] property without consent or warrant." This argument suggests an alternative argument to Miramontes' challenge to her initial detention; i.e., despite a lawful initial detention to secure the scene, Officer LaVallee did not have authority to search Miramontes' purse.

While not entirely clear, Miramontes' citation to *Valdez*, recitation of the facts in this case as they relate to *Valdez*, and request that the district court "rule similarly to the [*Valdez*] court" support an alternative argument that, even if Miramontes' detention was lawful, the subsequent search of her purse was not. Nevertheless, the crux of Miramontes' argument focused on the lawfulness of her detention under the balancing test articulated in *Williams*. Miramontes never once, during either the hearings or in her briefings, specifically argued the officers lacked reasonable suspicion to search her belongings, and indeed, she did not ever use the phrase "reasonable suspicion" in that context.

6

For example, Miramontes never argued, as she does now on appeal, that "leaving [Evans'] residence out the back door . . . did not give rise to reasonable articulable suspicion of criminal conduct" or that "[f]light is not, standing alone, a basis for reasonable articulable suspicion."  As a result, the district court neither made any factual findings related to nor ruled on whether the officers had authority to search Miramontes' property.  The absence of any such ruling is fatal to Miramontes' appeal.

The appellant has the burden to obtain an adverse ruling at the trial court.  *State v. Huntsman*, 146 Idaho 580, 586, 199 P.3d 155, 161 (Ct. App. 2008).  This Court will not review an appellant's assignment of error unless the record discloses such an adverse ruling which forms the basis for the claim.  *State v. Dougherty*, 142 Idaho 1, 6, 121 P.3d 416, 421 (Ct. App. 2005).  This principle remains true even when the trial court had actual knowledge of the issue, *Huntsman*, 146 Idaho at 586, 199 P.3d at 161, and even if the issue was argued to the court.  *In re Estate of Hirning*, 167 Idaho 669, 679-80, 475 P.3d 1191, 1201-02 (2020) (noting appellants never asked court to decide issue "despite the court pleading with them to make a clear argument").

As Miramontes concedes, "the district court did not address the lawfulness of the search of [her] purse." Accordingly, we decline to address for the first time on appeal whether the search of Miramontes' property was lawful, and thus we do not address whether an exception to the exclusionary rule precludes suppression of the evidence discovered during the search.

## IV.

## CONCLUSION

Miramontes failed to preserve for appeal the issue of whether the search of her property was lawful.  Accordingly, we affirm the judgment of conviction for possession of methamphetamine.

Judge LORELLO and Judge Pro Tem HORTON **CONCUR**.